[No. B182990. Second Dist., Div. Seven. Nov. 20, 2006.]

ROBERT HOLBROOK et al., Plaintiffs and Appellants, v. CITY OF SANTA MONICA, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Law Offices of Rosario Perry, Rosario Perry and Robert J. Franklin for Plaintiffs and Appellants.

Marsha Jones Moutrie, City Attorney, and Joseph Lawrence, Assistant City Attorney, for Defendant and Respondent.

**OPINION**

**ZELON, J.**—Robert Holbrook and Herb Katz, both members of the Santa Monica City Council, filed a petition for writ of mandate and complaint for declaratory relief claiming that the city council's meetings violated the California and United States Constitutions, the Ralph M. Brown Act (Brown Act) (Gov. Code,[1] § 54950 et seq.), and the California Occupational Safety and Health Act of 1973 (Lab. Code, § 6300 et seq.) (Cal-OSHA). The trial court sustained the City of Santa Monica's demurrer and granted its special motion to strike, and then entered judgment in the city's favor. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The gravamen of Holbrook and Katz's lawsuit is the fact that Santa Monica City Council meetings frequently run late into the night and include public comment as the final order of business. Forcing the public to wait so

---

[1] Unless otherwise indicated, all further references are to the Government Code.

long and stay so late to address the city council, they allege, "in essence deprives the public of their fundamental right to address their local legislative representatives." Holbrook and Katz assert that this schedule violates the California and United States Constitutions and the Brown Act, and that it causes workers to work excessively long hours in violation of Cal-OSHA. They petitioned for a writ of mandate and injunction compelling the city council to end its meetings by 11:00 p.m.

The City of Santa Monica filed a demurrer and a special motion to strike the complaint as a strategic lawsuit against public participation (SLAPP) pursuant to California Code of Civil Procedure section 425.16.

The trial court granted the special motion to strike on the grounds that the lawsuit arose from an act by the city in furtherance of the right of free speech, and that plaintiffs could not show that they were likely to prevail in their lawsuit because they lacked standing to sue. The court struck the complaint and petition, and ultimately entered judgment in the city's favor. Holbrook and Katz appeal.

## DISCUSSION

### I. *Applicability of Code of Civil Procedure Section 425.16*

 The majority of Holbrook and Katz's action—all but the final cause of action under the Labor Code—is governed by Code of Civil Procedure section 425.16, the anti-SLAPP statute. The anti-SLAPP statute targets lawsuits that chill "a party's constitutional right of petition" or free speech (*State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974, 975 [121 Cal.Rptr.2d 719]), and it permits a defendant to file a motion to strike a cause of action that interferes with those rights. (Code Civ. Proc., § 425.16.) "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) For the purposes of the anti-SLAPP statute, the word "person" includes governmental entities. (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1114 [57 Cal.Rptr.2d 207].)

█ Code of Civil Procedure "[s]ection 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. ([Code Civ. Proc.,] § 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in [Code of Civil Procedure] section 425.16, subdivision (e)' (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58]). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. ([Code Civ. Proc.,] § 425.16, subd. (b)(1); see generally *Equilon* [*Enterprises v. Consumer Cause, Inc.* (2002)] 29 Cal.4th [53,] 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

█ Here, with respect to Holbrook and Katz's constitutional claims and asserted violations of the Brown Act, the causes of action arise from protected activity: governmental speech and legislative action at city council meetings. For purposes of the anti-SLAPP statute, an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

█ All four criteria are satisfied here. The city council's exercise of its right of free speech in meetings that extend late into the night is the basis for the petition and complaint. Council members make oral statements before the other members of their legislative body and in connection with issues under review by the city council. They make statements in a place open to the public or a public forum, in connection with issues of public interest. The public meetings, at which council members discuss matters of public interest and legislate, are conduct in furtherance of the council members' constitutional right of free speech in connection with public issues and issues of

public interest. "Under the First Amendment, legislators are 'given the widest latitude to express their views' and there are no 'stricter "free speech" standards on [them] than on the general public.' [Citation.]" (*Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1261 [8 Cal.Rptr.3d 507].) The action arises directly from and is based on the city's exercise of its speech and petition rights. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–78 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

Holbrook and Katz argue, however, that the anti-SLAPP statute does not apply to their third and fourth causes of action, which assert violations of section 54954.3, subdivisions (a) and (b). Holbrook and Katz argue that the city cannot bring an anti-SLAPP motion that is designed to protect rights other than its own and conclude that the third and fourth causes of action do not pertain to the city's speech or petition rights because their claims do "not in any way curfew City or council member speech or petition" and only "challenge[] the City's scheduling of public comment after 11:00 p.m. If the City wishes to exercise its First Amendment rights or anything else after 11:00 p.m. under this cause of action it may, so long as its [*sic*] holds public comment beforehand."

This is entirely inconsistent with Holbrook and Katz's petition and complaint, in which they demand that the city council be "command[ed] . . . to adjour[n] and complete their meetings prior to 11:00 p.m.," and enjoined from "holding any meeting which stays in session beyond 11:00 p.m." We are unable to reconcile these demands with Holbrook and Katz's assertion that their claims do "not in any way curfew City or council member speech or petition." How may the city council freely "exercise its First Amendment rights or anything else after 11:00 p.m. under this cause of action," while at the same time it is to be compelled to conclude all meetings by 11:00 p.m.? Far from attempting to use the anti-SLAPP statute as a means of protecting others' speech rights, the city opposes a complaint that arises from—and is designed to restrict the city council's ability to hold—public meetings during which council members exercise their own freedoms of speech and petition in their interactions with other council members and with the public, and the city council, a legislative body, exercises its freedom of speech and considers issues of public concern. Holbrook and Katz have not established with this argument that these causes of action fall outside the ambit of Code of Civil Procedure section 425.16.

Holbrook and Katz also argue that the action does not arise from protected activity because they are challenging a content-neutral act of governance. They rely on *City of Cotati v. Cashman, supra,* 29 Cal.4th 69, which distinguished between the trigger for a cause of action and what the cause of action actually arises from, and on *San Ramon Valley Fire Protection Dist. v.*

*Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, at pages 353 through 358 [22 Cal.Rptr.3d 724], which held that an anti-SLAPP motion does not lie when an action does not arise from protected activity but from a non-speech-or-petition-related measure that merely was adopted by majority vote. They argue that the action here arises from what the *San Ramon* court referred to as an "[a]ct[] of governance mandated by law" (*San Ramon*, at p. 354), specifically "the City's defective attempt to comply with mandatory duties imposed by the Government Code, not speech." They contend they are challenging Santa Monica City Council Resolution No. 9932 (Resolution No. 9932), a content-neutral resolution governing the conduct of city council meetings.

This argument lacks merit. First, the petition and complaint does not challenge Resolution No. 9932—in fact, it does not even mention that resolution, which is no surprise because the petition and complaint was filed before Resolution No. 9932 was enacted.[2] More importantly, this lawsuit arises from the existence of prolonged City Council meetings, not from a resolution. Resolution No. 9932 does not mandate late-night meetings.[3] In the pertinent causes of action, Holbrook and Katz do not attack the resolution, but the late-night meetings, which they contend violate the Brown Act and the state and federal Constitutions because neither council members nor the public should be expected to address their government so late at night. This is a challenge to the legislative body's conduct of public meetings, not to the procedural elements of a resolution or to the resolution's compatibility with other state laws. It is the actual practice of holding late-running city council meetings—of the council engaging in the business of governing, with the accompanying exercise of speech and petition rights until late at night—that prompts this action. This argument does not establish that Code of Civil Procedure section 425.16 does not apply to these causes of action.

Finally, Holbrook and Katz claim that the safe harbor provision of Code of Civil Procedure section 425.17, subdivision (b) removes their action from the sweep of the anti-SLAPP statute. Code of Civil Procedure section 425.17, a legislative response to perceived abuse of the anti-SLAPP statute, provides that the anti-SLAPP law does not apply to "any action brought solely in the public interest or on behalf of the general public if all the following

---

[2] The petition and complaint does describe two resolutions, Santa Monica City Council Resolution Nos. 9614 and 9698, both of which were repealed by Resolution No. 9932.

[3] Resolution No. 9932 provides that "Unless otherwise determined by a majority of those Councilmembers present, all City Council meetings shall adjourn at 11:00 p.m., or as soon thereafter as the requirements of state law governing public comment are fulfilled."

conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or the class of which the plaintiff is a member. . . . [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (Code Civ. Proc., § 425.17, subd. (b).)

The trial court concluded that this exception did not apply because the action was not brought solely in the public interest, as it concerned Holbrook and Katz's preferences for particular working hours. We agree that the action is certainly not brought solely in the public interest, as Holbrook and Katz complain extensively in their declarations about the burden that late-running meetings impose upon them as public officials. Moreover, although the action is ostensibly brought on behalf of the general public, in the unlikely event it were to be successful it would not "confer a significant benefit . . . on the public as a whole," for its entire purpose is to cut off the meetings of the city council at 11:00 p.m. The very remedy they seek—a limit on the opportunity for members of the public to address the city council—runs counter to the Brown Act's mandate of providing an opportunity for the public to directly address legislative bodies on matters of interest to the public that are within the body's subject matter jurisdiction before or during the body's consideration of that matter. Holbrook and Katz have not shown that cutting off public comment and input, ending member debate, and preventing the city council from further legislative action at an 11:00 p.m. witching hour benefits the public in any way.[4]

Finally, even if we assume that private enforcement is necessary here, we see nothing disproportionate about the dissenting city council members bearing the cost of the litigation, for while the relief they seek may not be different than the relief the general public would receive, Holbrook and Katz (who have been outnumbered in their opposition to late-night meetings) stand chiefly to benefit from the cap on meeting times that they seek. The safe harbor provision of Code of Civil Procedure section 425.17, subdivision (b) does not apply here.

## II. *Likelihood of Success on the Merits*

When a defendant makes a prima facie showing that a cause of action arises out of protected activity, the trial court must then determine whether

---

[4] The City of Santa Monica, in connection with this issue, filed a request for judicial notice of the agenda dated August 8, 2006, which was denied. The city subsequently filed a request for reconsideration which the court has also denied.

the plaintiff has demonstrated a probability of prevailing on the claim. (Code Civ. Proc., § 425.16, subd. (b)(1).) The trial court concluded that Holbrook and Katz did not demonstrate a probability of success on the merits because they lacked standing, and granted the special motion to strike. Holbrook and Katz contend that the trial court erred in its ruling on the special motion to strike because they do in fact have standing to sue. We review the court's ruling de novo. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645 [24 Cal.Rptr.3d 619].)

■ Relying on *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793 [166 Cal.Rptr. 844, 614 P.2d 276] (*Carsten*) and *Braude v. City of Los Angeles* (1990) 226 Cal.App.3d 83 [276 Cal.Rptr. 256] (*Braude*), Santa Monica argues that it is well established that members of governmental boards and agencies lack standing to challenge in court the legality of actions taken by the governmental entity of which they are members. The California Supreme Court in *Carsten* and this court in *Braude* actually rendered much more limited rulings: A public official seeking a writ of mandate must have either a beneficial interest or some other source of standing beyond that of being a citizen-taxpayer. (*Carsten*, at pp. 797–801; *Braude*, at pp. 87–91.) By becoming a member of the public entity, the official forfeits the citizen-taxpayer standing right. (*Carsten*, at pp. 799–800; *Braude*, at p. 91.) We therefore consider whether Holbrook and Katz have a beneficial interest or an alternate basis for standing to sue.

## A. *Beneficial Interest*

■ To obtain a writ of mandate a petitioner must have a beneficial interest in the matter. (Code Civ. Proc., § 1086.) "The requirement that a petitioner be 'beneficially interested' has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten, supra*, 27 Cal.3d at p. 796.) "The petitioner's interest in the outcome of the proceedings must be substantial, i.e., a writ will not issue to enforce a technical, abstract or moot right. [Citations.] The petitioner also must show his legal rights are injuriously affected by the action being challenged. [Citation.]" (*Braude, supra*, 226 Cal.App.3d at p. 87.)

Holbrook and Katz claim that they have "a beneficial interest in the competent exercise of their rights and duties as public officials and in a safe and healthy workplace." They argue that working what they claim to be 20-hour days on meeting days creates an unhealthy and unsafe working

environment, and that the long hours hamper them in performing their official duties as council members because they struggle to digest information when they are tired, have difficulty asking questions and representing their constituents competently late at night, and sometimes leave before meetings conclude.

The problem for Holbrook and Katz is that the courts have not recognized a beneficial interest in the operation of the governmental entity arising from membership in that entity. In neither *Carsten, supra,* 27 Cal.3d 793, nor *Braude, supra,* 226 Cal.App.3d 83, did the petitioner have a beneficial interest recognized by the court. Membership in the governmental entity did not confer upon the member any special interest or particular right distinct from the public in seeing the board operate in accordance with law. For instance, in *Carsten,* the petitioner, a member of the Psychology Examining Committee of the Board of Medical Quality Assurance of the State of California, sought a petition for writ of mandate to compel the committee to comply with Business and Professions Code section 2942, which concerned the administration and grading of psychology licensing exams. (*Carsten,* at pp. 795–796.) The California Supreme Court held that because Carsten was "neither seeking a psychology license, nor in danger of losing any license she possesses under the rule adopted by the board, she is not a beneficially interested person within the meaning of the statute." (*Id.* at p. 797.) Carsten's membership alone did not make her particularly interested in the board operating pursuant to governing law—she possessed no beneficial interest by virtue of being a member of the board. Similarly, in *Braude,* there was no allegation that a council member who petitioned for mandate on allegations that the city council had not complied with applicable provisions of the California Environmental Quality Act had a beneficial interest by virtue of his membership on the city council. Instead, the court evaluated whether Braude's allegation that he would be personally detrimentally affected by increased traffic congestion due to the allegedly improperly approved development constituted a beneficial interest, and concluded that it did not. (*Braude, supra,* at pp. 87–89.)

Here, Holbrook and Katz have not demonstrated that they have a "special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten, supra,* 27 Cal.3d at p. 796.) Although they assert a beneficial interest in competently fulfilling their duties as public officials, they have not explained why this interest exceeds that of the public in general. Indeed, throughout their causes of action for constitutional and Brown Act violations in their petition and complaint they assert the interest of the public in the orderly and competent exercise of government, not a personal interest distinct from that of the public. For instance, they claim that they are beneficially interested in the issuance of the writ of mandate "because they have a right to the

performance of the Defendants/Respondents [*sic*] duties and are concerned that the Defendants/Respondents perform its [*sic*] clear, present and ministerial duty under the law to give members of the public an opportunity to address the City Council at a reasonable hour." They allege that a writ of mandate is necessary "to promote the policy of guaranteeing to citizens the opportunity to ensure that no government body impairs or defeats the Constitution of the United States, the Constitution of the State of California, the duly enacted statutes of the State of California, the common law of the State of California, or the purpose of legislation establishing a public right," and "to give the public the opportunity to speak at a reasonable time during the meeting, as to enforce and protect the clear, present, substantial legal right of the public to discuss business that is within the subject matter jurisdiction of the legislative body of their local elected officials at the regularly scheduled meetings of the City Council."

Holbrook and Katz complain in their constitutional cause of action that "Plaintiffs/Petitioners['] and the City[']s residents['] rights to instruct their representatives and petition the government have been and will continue to be violated. Defendants/Respondents cannot expect Plaintiffs/Petitioners or the public in general to address their government at such late night hours and under such unreasonable circumstances." In their first Brown Act claim, they assert that the result of the late-night meetings is that "the later part of the City Council meetings are not open and public. Plaintiffs/Petitioners, and the general public, are being denied their right to attend meetings, address their elected representatives, and take an active part in open government." In their second and third Brown Act claims, Holbrook and Katz neglect to mention themselves at all, alleging only that "members of the public are not afforded an opportunity to address the City Council at the Public Comment period" because the meetings run so late, effectively denying "members of the public . . . their opportunity to address the City Council," and that "[m]embers of the public cannot be expected to stay up until such hours to address their legislature." None of these allegations demonstrate any beneficial interest on the part of Holbrook and Katz that differs from the general interest of all citizens in the effective and legal operation of their governmental entities.

Not only do Holbrook and Katz assert no interest that differs from that of the general public, they claim no personal damages or consequences distinct from those of the populace that could create a beneficial interest in them. Instead, they allege that "[t]he violations committed by the Defendants/Respondents are continuing and are causing grievous harm to numerous members of the public," and that the late-night meetings inflict "irreparable damage to the operation of our system of law and the body politic that relies on their local legislative body to function by permitting the flow of public comments and opinions of its citizens and taxpayers." While in their documents submitted in opposition to the anti-SLAPP motion they contend that

they are less effective in performing their duties due to the late-night opera-
tions of the city council, their allegations concern the competent functioning of
the city council and its members rather than a personal interest or consequence
sufficient to establish a beneficial interest. Rather than alleging, for instance,
that their fatigue due to late-night meetings jeopardizes their ability to perform
their duties and thus, their ability to stand for reelection and retain their posts,
Holbrook and Katz assert that "late meetings are a subversion of the public's
right to be heard and to democracy;" that their responses to the public are not
meaningful because it is so late; that the late meetings "hurt or prevent public
input" and are "unfair to" the public, staff, and council members; and that one,
Katz, sometimes leaves before the conclusion of city council meetings, "which
is not fair or right."

All these allegations pertain to the effective operation of government and
the rights of the public, not to specific interests or rights of Holbrook and
Katz individually. We cannot discern any reason why the public would have
any less interest than the council members in a city council in which
members fulfill their duties as public officials and operate in accordance with
applicable law. As no beneficial interest in the workings of a governmental
entity is conferred by serving on that entity, Holbrook and Katz have not
established any beneficial interest sufficient to confer standing.[5]

Holbrook and Katz analogize their situation to that in *Degrassi v. Cook*
(2002) 29 Cal.4th 333, 336–338 [127 Cal.Rptr.2d 508, 58 P.3d 360], in which
a city council member alleged that members of the city council, the chief of
police, the city manager, and others harassed her, barred her from participat-
ing in council business, prevented her from speaking to city employees, and
threatened her, all with the intent to deprive her of the ability to participate in
the proceedings of the city council. There, in a decision that rests entirely on
other grounds, the Supreme Court noted that among the council member's

---

[5] Were Holbrook and Katz subject to particular liabilities by virtue of their membership on
the city council, the beneficial interest analysis might well be different. Damages, however, are
not among the remedies provided by law for a violation of the Brown Act (§§ 54960, 54960.1,
54960.5), and to the extent costs and fees are available to successful Brown Act litigants, the
Brown Act specifically provides that those costs and fees will not be borne personally by
government officials or employees. (§ 54960.5.) Section 54959 makes it a misdemeanor for a
member of a legislative body to attend a meeting of that body if action is taken in violation of
the Brown Act and if the member intends to deprive the public of information to which the
member knows or has reason to know the public is entitled under the Brown Act. Nothing in
the record before us suggests any possibility that Holbrook or Katz could possibly face
criminal liability for the alleged Brown Act violations here: They have not asserted that they
had the requisite intent to deny the public information to which the public was entitled, nor
have they raised the specter of criminal prosecution as a threat to them. The mere existence of
criminal penalties for certain deliberate violations of the Brown Act cannot confer a beneficial
interest on Holbrook and Katz as it appears inconceivable that they would face charges under
the facts in this record.

remedies would be a petition for mandate or a suit under the Brown Act. (29 Cal.4th at p. 342.) Holbrook and Katz attempt to inflate this comment about an available remedy into a principle that they have standing to petition for mandate and sue the city council under the Brown Act, but the cases are wholly dissimilar. The instant case does not involve conduct directed at individual council members, wholly distinct and removed from the official proceedings of the governmental entity, that was designed to keep those council members from performing their official duties. Instead, the actions that Holbrook and Katz are complaining about here are official actions of the city council—the extension of public meetings late into the night and the council's refusal to support their attempts to continue meetings that run late. *Degrassi* does not establish standing here.

### B. *Brown Act Standing*

As Holbrook and Katz have not demonstrated that they have a beneficial interest sufficient to confer standing to petition for writ of mandate, we then turn to their alternative proffered ground for standing: the Brown Act. Section 54960, subdivision (a) provides that "The district attorney or any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of [the Brown Act] by members of the legislative body of a local agency or to determine the applicability of [the Brown Act] to actions or threatened future action of the legislative body, or to determine whether any rule or action by the legislative body to penalize or otherwise discourage the expression of one or more of its members is valid or invalid under the laws of this state or of the United States . . . ." Similarly, section 54960.1, subdivision (a) entitles the district attorney or "any interested person" to "commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of [specified sections of the Brown Act] is null and void under this section." Holbrook and Katz contend that they are interested persons within the meaning of the Brown Act and thus have statutory standing to bring their suit.

The term "any interested person" has been defined broadly for purposes of the Brown Act. In *McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310 [2 Cal.Rptr.3d 774] (*McKee*), the petitioner was held to have standing to file a petition for writ of mandate against the Orange Unified School District even though he was not a resident or taxpayer in Orange County. The Court of Appeal concluded that McKee had standing to pursue

alleged Brown Act violations because he was a citizen of the State of California. (110 Cal.App.4th at p. 1319.) In drawing this conclusion, the court looked to the Brown Act itself, which in preamble reads, "The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950.)

The court in *McKee* observed the similarities between this prefatory language in the Brown Act and assertions of fundamental rights of citizenship in important American documents and speeches: "The principles articulated in the Brown Act's statement of intent echo the preamble to the United States Constitution, beginning 'We the People,' and President Lincoln's statement in the Gettysburg Address that our government is one 'of the people, by the people, for the people.' The Brown Act similarly reflects the objective of the Declaration of Independence to provide an open government: 'We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain inalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.—That to secure these rights, Governments are instituted among Men, *deriving their just powers from the consent of the governed . . . .*' " (*McKee, supra,* 110 Cal.App.4th at pp. 1316–1317.)

The *McKee* court emphasized that the rights at which the Brown Act is directed are the core rights of citizens: "[T]he right to disclosure under the Brown Act is an attribute of *citizenship* of the State of California." (*McKee, supra,* 110 Cal.App.4th at p. 1318.) Support for this state-citizenship-based right came from *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432 [261 Cal.Rptr. 574, 777 P.2d 610], a non-Brown Act case that was nonetheless instructive. The court quoted approvingly from *Common Cause*: " ' " ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' " [Citations.] The question in this case involves a public right to voter outreach programs, and *plaintiffs have standing as citizens to seek its vindication.*' [Citations.]" (*McKee,* at p. 1319, italics added, quoting *Common Cause,* at p. 439.) Accordingly, the *McKee* court concluded, "McKee, as a California citizen, has an interest in seeking vindication of the public's right to know what legislators are doing and the public's ability to ensure democratically elected government officials are following the law." (*McKee,* at p. 1319.)

■ Although Holbrook and Katz argue that *McKee* establishes that they have standing to sue here, *McKee* actually is fatal to their claim. *McKee*

demonstrates thoroughly and persuasively that the standing conferred by the Brown Act is standing based on citizenship—precisely the kind of standing that a citizen forfeits when he or she becomes a public official. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 144–145 [172 Cal.Rptr. 206, 624 P.2d 256] [*Carsten, supra,* 27 Cal.3d 793 stands for the proposition that when a petitioner's standing is based on asserting a citizen's interest in having the laws executed and public duties enforced, the public policy conferring standing in such instances is subject to being "outweighed in a proper case by competing considerations of a more urgent nature" such as that in *Carsten*: "the dangers consequent upon allowing an administrative board member to sue her own agency"].) In *Carsten*, the California Supreme Court explained that had Carsten remained a private citizen she would have retained the right to "compel a governmental instrumentality to comply with its constitutional or statutory duty." (*Carsten*, at p. 797.) By taking public office on the governmental board, however, she relinquished the right she would otherwise have as a citizen-taxpayer to sue that board: "[A] board member is not a citizen-taxpayer for the purpose of having standing to sue the very board on which she sits." (*Id.* at p. 801.)

The Supreme Court offered what it termed "persuasive legal and policy reasons" why citizen-taxpayer standing may not be exercised by public officials to sue the governmental body on which they serve. (*Carsten, supra,* 27 Cal.3d at p. 798.) First, it places the courts in the position of offering advisory opinions: "Since petitioner has no personal interest in the outcome of the litigation, she is in effect seeking to have the courts render an advisory opinion on the propriety of an administrative action. A judgment here would affect no person either favorably or detrimentally; it would purely and simply offer gratuitous advice to the board . . . ." (*Ibid.*) Second, such a petitioner is in effect suing him or herself, and courts should not "encourage or permit this type of narcissistic litigation . . . because of the inevitable damage such lawsuits will inflict" upon the process of government. (*Ibid.*)

Finally, significant policy concerns "militate against permitting disgruntled governmental agency members to seek extraordinary writs from the courts. Unquestionably the ready availability of court litigation will be disruptive to the administrative process and antithetical to its underlying purpose of providing expeditious disposition of problems in a specialized field without recourse to the judiciary. Board members will be compelled to testify against each other, to attack members with conflicting views and justify their own positions taken in administrative hearings, and to reveal internal discussions and deliberations. Litigation—even the threat of litigation—is certain to affect the working relationship among board members. In addition, the defense of lawsuits brought by dissident board members—and such suits would undoubtedly be frequent—will severely tax the limited budgetary resources of most public agencies." (*Carsten, supra,* 27 Cal.3d at p. 799.) Moreover,

"[f]rom the vantage point of the judiciary such litigation has ominous aspects. It is purely and simply duplicative, a rerun of the administrative proceedings in a second, more formal forum. The dissident board member, having failed to persuade her four colleagues to her viewpoint, now has to persuade merely one judge. The number of such suits emanating from members on city, county, special district and state boards, will add significantly to court calendar congestion." (*Ibid.*)

The Supreme Court acknowledged that public officials are also taxpayers (and of course state citizens), but noted that these types of suits arise not from the petitioners' everyday experience as taxpaying citizens, but from their experiences in government: "While it is true that this petitioner is not only a board member but also a taxpayer, it is as a board member that she acquired her knowledge of the events upon which she bases the lawsuit. Her interest in the subject matter was piqued by service on the board, not by virtue of the neutrality of citizenship. The suit was brought in the former, not the latter capacity." (*Carsten, supra,* 27 Cal.3d at p. 799.) The court also observed that public officials are not infrequently found to have forfeited certain rights as a condition of participating in public service. (*Ibid.*) The Supreme Court concluded, "It follows that petitioner may not exercise her citizen's right to sue an administrative board and to simultaneously serve on the same board. The two functions are manifestly incompatible; one or the other must yield." (*Id.* at p. 800.)

■ We think the Supreme Court's conclusion entirely applicable here in the context of legislators attempting to exercise citizen-taxpayer standing to sue the legislative body on which they sit. The standing Holbrook and Katz seek to assert is based on the same fundamental citizenship rights as the citizen-taxpayer standing asserted by the petitioner in *Carsten, supra,* 27 Cal.3d 793.[6] The reasoning of *Carsten,* particularly the discussion of the legal and policy reasons not to permit such suits, is equally germane in the context of citizen standing conferred by the Brown Act. Holbrook and Katz are similarly suing themselves, despite the fact that their suit is denominated as against the City of Santa Monica—they are seeking to compel themselves, and the other members of the board, to run city council meetings differently. They are attempting precisely the same maneuver as the *Carsten* and *Braude* petitioners: having been unsuccessful in persuading their colleagues with advocacy of their views, they turned to the courts in hopes of persuading

---

[6] Holbrook and Katz allege that they are beneficially interested in the issuance of the writ of mandate because "they have a right to the performance of [the city's] duties and are concerned that [the city] perform its clear, present and ministerial duty under the law to give members of the public an opportunity to address the City Council at a reasonable hour." They assert that "[t]he duty at issue is one of public right," and that they seek a writ of mandate "to procure the enforcement of a public duty or to prohibit the named Defendants/Respondents from continuing to act contrary to their public duty."

smaller, different audiences—first a Superior Court judge, and now two or three Court of Appeal justices—to take their position. Both Holbrook and Katz acknowledge that they have tried to persuade their colleagues on the city council to "continue the late meetings" to another date, but that they "have never been successful in getting the four votes necessary for a continuance even after pleading with the city council members for one." We agree with the Supreme Court that citizen standing is not a weapon to put in the hands of dissatisfied public officials seeking a new venue for advocacy; that the courts must not become a body to hear what would amount to legislative appeals; and that permitting this kind of citizen lawsuit would be incompatible with the officials' acceptance of public office and detrimental to the separation of powers. Accordingly, for the reasons set forth in *Carsten*, we conclude that when Holbrook and Katz accepted their seats on the Santa Monica City Council they forfeited the Brown Act standing they would otherwise have had as citizens of California to sue the city council.[7]

III. *The Labor Code Cause of Action**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] We recognize that in *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1288 [89 Cal.Rptr.2d 60], the Sixth District Court of Appeal appeared to accept a public official's assertion that she had standing under the Brown Act to sue the school board on which she sat. The court, however, did not make any such holding—it merely mentioned in passing, on its way to holding that the petitioner had not stated a claim under the Brown Act, that "[t]he statutory language providing that 'any interested person' may bring such an action appears to be all-inclusive and supports appellant's position." (*Ingram v. Flippo, supra*, 74 Cal.App.4th at p. 1288.) It does not appear that the *Ingram* court considered the question we address here—whether under *Carsten, supra*, 27 Cal.3d 793, and *Braude, supra*, 226 Cal.App.3d 83, a public official forfeits citizen standing to sue a particular governmental entity by accepting a seat on that entity. We therefore find the suggestion in this opinion that standing may exist to be unpersuasive.

Similarly, in *Johnson v. Bradley* (1992) 4 Cal.4th 389 [14 Cal.Rptr.2d 470, 841 P.2d 990], the California Supreme Court stated that a city council member had standing in a mandamus proceeding seeking to invalidate and enjoin enforcement of a voter-adopted amendment to a city charter. The Supreme Court, however, did not state the basis for the council member's standing and relegated the entire matter to a footnote, noting the issue's lack of significance in the context of that case: "We have reviewed the standing and 'proper parties' issues cited above, and conclude neither was erroneously decided, and neither presents an important issue warranting our attention. [Citation.]" (*Johnson*, at p. 394, fn. 5.) It cannot be determined from this cursory discussion whether the city council member had standing based on a beneficial interest or on some other ground; accordingly, this case does not tend to demonstrate that Holbrook and Katz have standing here.

*See footnote, *ante*, page 1242.

## DISPOSITION

The judgment is affirmed. The City of Santa Monica shall recover its costs, if any, on appeal.

Perluss, P. J., and Johnson, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 21, 2007, S148971.