Filed 4/30/14: pub. & mod order (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CITY OF MONTEBELLO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROSEMARIE VASQUEZ et al.,<br><br>    Defendants and Appellants;<br><br>ARAKELIAN ENTERPRISES INC.,<br><br>    Intervener. | B245959<br><br>(Los Angeles County<br>Super. Ct. No. BC488767) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rolf Treu, Judge. Affirmed.

Revere & Wallace, Frank Revere for Defendants and Appellants.

AlvaradoSmith, Raul F. Salinas, and Mary M. Monroe; Leibold McClendon & Mann, John G. McClendon for Plaintiff and Respondent.

_____

Respondent City of Montebello (the City) sued appellants, Montebello City Council members Rosemarie Vasquez, Robert Urteaga, and Kathy Salazar, and city official Richard Torres, seeking declaratory relief for violations of Government Code section 1090, which prohibits city officers and employees from having a financial interest in any contract made by them in their official capacity. The trial court denied appellants' special motion to strike the complaint under Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute. On appeal, appellants contend the trial court erred in denying their motion because the City's lawsuit arises from protected activity and the City failed to demonstrate a probability of prevailing on the merits. We disagree and affirm.

## Background

We obtain the background facts from "'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

The present action arises from appellants' approval of a city contract granting Arakelian Enterprises, Inc. dba Athens Services (Athens) an exclusive right to provide commercial waste hauling services in Montebello. Athens is a waste collection and recycling service that has had an exclusive contract to provide *residential* waste hauling services in Montebello since 1962.

Sometime in 2007, while running for city council, Urteaga approached Athens and suggested it submit a proposal to the city council to become the exclusive commercial and industrial waste hauling service in Montebello, in addition to being the City's exclusive residential waste hauling service. Athens later contributed to Urteaga's campaign, and he was elected to the city council.

In 2008, Torres, the City Administrator, worked with Athens to negotiate the terms of an exclusive contract, under which Athens would provide improved residential trash hauling services at no increased price and also become the exclusive commercial

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

and industrial waste hauling service beginning in 2016. In exchange for this exclusivity, Athens agreed to make a one-time $500,000 cash payment to the City.

Athens then submitted a proposal to the city council to become the exclusive provider of commercial waste hauling services, and requested approval of the negotiated contract. On July 9, 2008, the City held a public hearing at a city council meeting regarding the City's waste collection services. At the hearing, a number of speakers opposed Athens' proposal.

Athens' proposal was again addressed at a city council meeting on July 23, 2008. More than twenty people spoke in opposition to the exclusive contract during four hours of discussion. Vasquez and Urteaga then moved to approve the contract, and it was approved by a 3-2 vote, with Vasquez, Urteaga, and Salazar in favor of the contract and the mayor and another council member against it.

Once approved, the contract required the mayor's signature to effectuate it. The mayor, however, refused to sign the contract for over six weeks, stating he was attempting to verify its terms and ascertain the legal effect of a pending referendum effort by independent waste haulers in opposition to the Athens contract. On September 12, 2008, the contract was still awaiting the mayor's signature. Vasquez then signed the contract as Montebello's mayor pro. tem., stating she was authorized to do so because the mayor's refusal to execute the contract rendered him "absent" for purposes of the agreement.

Vasquez ran for reelection in November 2009 and Athens contributed $45,000 to her campaign. She was not reelected. Athens also contributed $37,300 to efforts to defeat the mayor's reelection campaign, but the mayor was reelected. After the November 2009 election, City voters qualified a special election to recall Urteaga and Salazar. Athens sponsored a "Say No to Recall" campaign to which it contributed $353,912.73. The campaign was unsuccessful, and both Urteaga and Salazar were recalled. During the same election cycle, Athens contributed no more than $9,000 to any city council campaign in any other city.

**The City's Lawsuit against Appellants**

On July 23, 2012, the City sued appellants, alleging they had violated Government Code section 1090, which prohibits city officers from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." (Gov. Code, § 1090.) The City alleged Vasquez voted to approve the Athens contract with the expectation that Athens would financially support her reelection campaign, and Urteaga and Salazar voted to approve it with the expectation that Athens would financially support their future campaigns. The City sought a judgment declaring the contract void because at least one official or employee of the City was financially interested in it. The City also sought an order requiring any appellants found to be financially interested in the Athens contract to disgorge to the City any money they received from Athens. Athens successfully intervened in the litigation.

**The Anti-SLAPP Motion**

On September 28, 2012, appellants filed an anti-SLAPP motion to strike the City's complaint on the grounds that appellants' legislative actions were protected activity and the City could not establish a probability of prevailing on the merits. In support of their motion, appellants declared they had no financial interest in the Athens contract. Vasquez, Urteaga, and Salazar each declared they voted for the contract because they thought it best for the City of Montebello, its residents, and its businesses, not because they anticipated Athens would financially support their future election campaigns. Athens' executive vice president declared Athens made no promise to contribute to any city council members in exchange for their votes.

In opposition to appellants' anti-SLAPP motion, the City argued the lawsuit was exempt from the anti-SLAPP statute pursuant to section 425.16, subdivision (d), which states the anti-SLAPP provisions do not apply to "any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor." Alternatively, the City argued appellants' act of voting was not protected activity within the meaning of section 425.16.

4

The trial court found the public enforcement exemption under section 425.16, subdivision (d) did not apply. The court then determined appellants' legislative actions and votes qualified as protected activity, but found the City established a probability of prevailing on the merits because the evidence that Athens had contributed to some of appellants' campaigns substantiated the City's claim that appellants violated Government Code section 1090. The court denied the anti-SLAPP motion, and appellants timely appealed.

**Discussion**

**1.     Standard of Review**

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Ibid.*)

**2.     Section 425.16**

Under section 425.16, a party may move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity."[2] (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420-1421.) Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

---

[2] An anti-SLAPP motion may be made against a claim for declaratory relief. (*Mission Springs Water District v. Verjil* (2013) 218 Cal.App.4th 892, 909.)

In evaluating an anti-SLAPP motion, we conduct a two-step analysis. First, we must decide whether the defendant "has made a threshold showing that the challenged cause of action arises from protected activity." (*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 488.) For this purpose, protected activity "includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Second, if the defendant makes this threshold showing, we decide whether the plaintiff "has demonstrated a probability of prevailing on the claim." (*Taheri Law Group v. Evans*, *supra*, 160 Cal.App.4th at p. 488.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute–i.e., that arises from protected speech or petitioning *and* lacks even minimal merit–is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.)

**3.     The Public Enforcement Exemption**

The City first argues its lawsuit is exempt from the anti-SLAPP statute pursuant to the public enforcement exemption under section 425.16, subdivision (d). Section 425.16, subdivision (d), provides that the anti-SLAPP statute "shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor." (§ 425.16, subd. (d).)

Relying on *City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302, the City argues the public enforcement exemption applies here because its lawsuit was brought in the name of the City of Montebello to enforce a law aimed at public protection. In *City of Long Beach*, the court

6

determined that despite the statute's plain language exempting only actions "brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor," it could reasonably infer the exemption "extended to all civil actions brought by state and local agencies to enforce laws aimed at consumer and/or public protection." (*Id.* at pp. 306, 308.) The court therefore concluded the exemption applied to an action brought by the City of Long Beach. (*Id.* at pp. 307-308.)

In *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, the court disagreed. There, the court found the language of section 425.16, subdivision (d) to clearly and unambiguously apply only to an action "brought in the name of the people of the State of California." (*Id.* at pp. 775-776.)

We agree with *City of Colton* that the plain language of section 426.15, subdivision (d) limits the public enforcement exemption to actions brought in the name of the people of the State of California, not to all civil actions brought by state and local agencies to enforce laws aimed at public protection. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 ["The Legislature clearly knows how to create an exemption from the anti-SLAPP statute when it wishes to do so"].) This limitation is designed to exempt enforcement actions on issues of state-wide concern. Actions solely based on parochial issues are not aimed at protecting the citizenry at large and are thus undeserving of the exemption.

Here, the City's lawsuit against appellants was not brought in the name of the People of the State of California, nor is the City suing on an issue of state-wide concern. The waste hauling contract concerns only Montebello and its citizens. We therefore conclude the public enforcement exemption does not apply.

4. **Arising from Protected Activity**

Appellants argue the council members' public statements and votes and Torres's actions relating to the Athens contract constituted protected activity within the meaning of section 425.16. We disagree. A legislator's vote and "acts of governance mandated by law, without more, are not exercises of free speech or petition." (*Nev. Commission on*

*Ethics v. Carrigan* (2010) 131 S.Ct. 2343, 2350; *San Ramon Valley Fire Protection District v. Contra Costa County Employees' Retirement Association* (2004) 125 Cal.App.4th 343, 354.)

In *Carrigan*, a city council member challenged a Nevada law prohibiting a legislator who had a conflict of interest both from voting on a proposal and advocating for or against it, arguing the law violated the First Amendment.  (*Nev. Commission on Ethics v. Carrigan*, *supra*, 131 S.Ct. at p. 2345.)  The United States Supreme Court held the restriction did not violate the legislator's right to free speech because a legislator's voting power does not constitute speech.[3]  The Supreme Court reasoned that because a legislator casts his vote as a political representative executing the legislative process on behalf of his constituents, he has no personal right in his vote.  (*Id.* at p. 2350.)  A legislator's act of voting is therefore "conduct engaged in for an independent governmental purpose," not an act of communication conveying the legislator's personal message.  (*Id.* at pp. 2350-2351.)

In *San Ramon Valley Fire Protection District*, the board of a county retirement system voted to require a fire protection district to increase its pension contributions to the retirement system.  (*San Ramon Valley Fire Protection District v. Contra Costa County Employees' Retirement Association*, *supra*, 125 Cal.App.4th at pp. 347-348.)  Seeking to contribute a lesser amount, the district sued the board for mandamus and declaratory relief.  The board brought a special motion to strike under the anti-SLAPP statute, arguing its decision to require additional pension contributions after a public hearing and a majority vote of the board's members constituted protected activity.  (*Id.* at pp. 348-349, 353.)  The trial court denied the motion, and the appellate court affirmed, holding the board's adoption of a pension contribution requirement was not an exercise of free speech or the right to petition.  (*Id.* at pp. 346, 357.)

_____

[3] This ruling is directly contrary to dictum in *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, in which the court opined that "voting is conduct qualifying for the protections afforded by the First Amendment" and would therefore constitute protected activity under section 425.16.  (*Id.* at p. 183, fn. 3.)

The court observed that a contrary decision would significantly burden the petition rights of those seeking review of government actions. (*San Ramon Valley Fire Protection District v. Contra Costa County Employees' Retirement Association*, *supra*, 125 Cal.App.4th at pp. 357-358.) Because many public entity decisions are arrived at after discussion and a vote at a public meeting, petitioners challenging those decisions would be forced to make a prima facie showing of merit at the pleading stage, which would "chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power." (*Id.* at p. 358.)

Here, the City's claim against Vasquez, Urteaga, and Salazar is based on the council members' votes to approve a contract in which they had a financial interest. Their acts of voting represented the commitment of their legislative power to the approval of a city contract, which did not implicate their own right to free speech nor convey any symbolic message (see *Nev. Commission on Ethics v. Carrigan*, *supra*, 131 S.Ct. at pp. 2350-2351), and therefore those acts fail to qualify as protected activity within the meaning of section 425.16. To hold otherwise would cause the anti-SLAPP statute to swallow all city council actions and require anyone seeking to challenge a legislative decision on any issue to first make a prima facie showing of the merits of their claim. (See *San Ramon Valley Fire Protection District v. Contra Costa County Employees' Retirement Association*, *supra*, 125 Cal.App.4th at pp. 357-358.) We decline to extend the purview of the anti-SLAPP statute in such a manner.

Council members Vasquez, Urteaga, and Salazar rely on *Holbrook v. City of Santa Monica* (2006) 144 Cal.App.4th 1242 to argue their actions in approving the Athens contract constitute protected legislative activity. *Holbrook* is distinguishable. There, an individual sued a city, its city council, and city council members, alleging that by running city council meetings late into the night and allowing public comment only at the end of the meeting, the defendants deprived the public of the fundamental right to address their local representatives. The complaint sought an injunction compelling the city council to end its meetings by 11:00 p.m. (*Holbrook v. City of Santa Monica*, *supra*, 144 Cal.App.4th at pp. 1245-1246.) The trial court granted defendants' special motion to

9

strike, and the appellate court affirmed, holding the lawsuit arose from protected activity because it "[arose] from– and [was] designed to restrict the city council's ability to hold– public meetings during which council members exercise[d] their own freedoms of speech and petition in their interactions with other council members and with the public." (*Id.* at pp. 1246, 1248-1249.) In the instant case, the lawsuit arose from, and was designed to restrict, the council members' acts of voting to approve a contract in which they had a financial interest, which does not implicate the exercise of the council members' own freedom of speech or petition.

The City's claim against Torres is based on his involvement in negotiating a contract in which he had a financial interest. Nothing about Torres's acts to negotiate a routine city contract as part of his job as City Administrator implicated his exercise of free speech or the right to petition.

Torres relies on *Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Association of Governments* (2008) 167 Cal.App.4th 1229 to argue his actions in negotiating the Athens contract constituted protected activity. This case is distinguishable. In *Santa Barbara County*, a non-profit political organization sued a local transportation authority, alleging the transportation authority engaged in a government-sponsored political campaign in favor of a ballot measure, and sought to enjoin it from advocating passage of the measure or expending funds for such advocacy. (*Id.* at pp. 1234-1235.) The trial court granted the transportation authority's special motion to strike, and the appellate court affirmed. The court noted section 425.16 "extends to government entities and employees that issue reports and take positions on issues of public interest relating to their official duties," and held the lawsuit challenged conduct expressly defined by the anti-SLAPP statute as acts in furtherance of free speech rights, as the transportation authority made oral and written statements concerning the county's transportation issues in official proceedings and public forums, and those statements concerned issues of public concern (§ 425.16, subd. (e)). (*Id.* at pp. 1237-1238.)

10

Here, the City's complaint alleged Torres asked Athens to submit a proposal to become the exclusive wasting hauling franchise in Montebello, and thereafter negotiated the terms of an exclusive contract on behalf of the City. Unlike the lawsuit in *Santa Barbara County*, which was based on a government entity's political campaign in favor of a ballot measure, the City's claim against Torres is predicated on his negotiation of the Athens contract, not on any actions publicly advocating for its passage. Nothing about Torres's duties as City Administrator to negotiate contracts on the City's behalf implicated Torres's right to take positions on issues of public interest.

We note that we do not hold a governmental act may never constitute protected speech within the meaning of section 425.16.

Appellants have failed to make a threshold showing that their challenged actions arose from protected activity within the meaning of section 425.16. We therefore need not reach the second prong of the anti-SLAPP analysis.

## Disposition

The judgment is affirmed. The City is entitled to recover costs on appeal.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

JOHNSON, J.

11

Filed 5/30/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CITY OF MONTEBELLO,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROSEMARIE VASQUEZ et al.,<br><br>Defendants and Appellants;<br><br>ARAKELIAN ENTERPRISES INC.,<br><br>Intervener. | B245959<br><br>(Los Angeles County<br>Super. Ct. No. BC488767)<br><br>ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION FOR<br>PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 30, 2014, be modified as follows:

On page 11, the second sentence of the first full paragraph, the word "wasting" is changed to "waste" so the sentence reads:

Here, the City's complaint alleged Torres asked Athens to submit a proposal to become the exclusive waste hauling franchise in Montebello, and thereafter negotiated the terms of an exclusive contract on behalf of the City.

The opinion in the above-entitled matter filed on April 30, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in judgment.

_____
ROTHSCHILD, Acting P. J.        CHANEY, J.            JOHNSON, J.

12