[No. B048978. Second Dist., Div. Seven. Dec. 12, 1990.]

MARVIN BRAUDE, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents;
W & M PARTNERS DEVELOPMENT CORPORATION, Real
Party in Interest and Respondent.

**COUNSEL**

Carrick & Dale and George D. Dale for Plaintiff and Appellant.

James K. Hahn, City Attorney, Edward C. Dygert, Senior Assistant City Attorney, and Patricia V. Tubert, Deputy City Attorney, for Defendants and Respondents.

Cox, Castle & Nicholson and Kenneth B. Bley for Real Party in Interest and Respondent.

**OPINION**

**JOHNSON, J.**—Appellant and petitioner, Marvin Braude, filed a petition for peremptory writs of mandamus in the superior court alleging ordinance No. 165382 authorizing real party in interest, W & M Partners Development Corporation, to construct the Watt City Center office complex, was adopted and approved illegally by respondents Los Angeles City Council and Mayor Tom Bradley. The trial court sustained a demurrer without leave to amend and entered a judgment of dismissal. We affirm.

### FACTS AND PROCEEDINGS BELOW

On this appeal we accept as true the allegations of the petition. (*Isrin* v. *Superior Court* (1965) 63 Cal.2d 153, 155 [45 Cal.Rptr. 320, 403 P.2d 728].)

Petitioner is a member of the Los Angeles City Council. He is a resident of Los Angeles, a taxpayer and regularly commutes on the Santa Monica and Harbor Freeways to his principal place of business in downtown Los Angeles.

Respondent W & M Partners Development Corporation (W & M) applied for a permit to build 2 office buildings, including a 62-story high rise, totaling 1,600,000 square feet in downtown Los Angeles. This project is situated adjacent to and west of the Harbor Freeway. W & M filed an application for exemption from Interim Control Ordinance No. 163094 which prohibits development until a specific plan for the area is adopted except with the express approval of the city planning commission or city council on appeal. The interim control ordinance mandates a review by city staff, an environmental impact report, a public hearing and official action by the planning commission.

Based on staff reports, the environmental impact report, and oral testimony at the public hearing, the city planning commission approved a building permit for one of the parcels but denied W & M's application for exemption for the entire project and development agreement as proposed.

Pursuant to provisions in the interim control ordinance, W & M requested a review of the decision of the city planning commission by the full city council. The city planning committee voted to grant W & M's appeal. Braude alleges the planning committee adopted findings drafted by a W & M lobbyist in lieu of preparing its own findings to forward to the city council with its recommendations and suggested conditions for approval.

A week later the city council met to consider the appeal. Braude argued against the project, pointing out the serious impact increased traffic congestion would have on the downtown and surrounding areas. The city council voted 14 to 1 to approve the project, with Braude casting the lone dissenting vote.

The ordinance approving the project was heard again a week later and again passed on a vote of 13 to 1. The ordinance approving the project was signed by respondent Mayor Tom Bradley on December 27, 1989.

On January 3, 1990, Braude filed this petition for writ of mandate to, inter alia, command respondents to set aside their adoption of the ordinance and to comply with applicable provisions of the California Environmental Quality Act concerning proper building density and traffic flow. The trial court found Braude lacked standing to seek this relief as he was not beneficially interested in the outcome of the litigation within the meaning of

Code of Civil Procedure section 1086 and because, under the authority of *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793 [166 Cal.Rptr. 844, 614 P.2d 276], Braude, as a councilman suing his own board, had forfeited his right to sue as a citizen-taxpayer. The court then sustained a demurrer without leave to amend and ordered entry of dismissal. This appeal followed.

### DISCUSSION

I. *Braude Does Not Have Standing to Bring This Suit Because He Does Not Have a Beneficial Interest Within the Meaning of Code of Civil Procedure Section 1086.*

Section 1086 of the Code of Civil Procedure expresses the controlling statutory requirement for standing for writs of mandate. That statute provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."[1]
■ The requirement a petitioner be "beneficially interested" has been generally interpreted to mean one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. (*Carsten* v. *Psychology Examining Com., supra*, 27 Cal.3d at p. 796; *Fritts* v. *Charles* (1904) 145 Cal. 512, 513 [78 P. 1057]; *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].) The petitioner's interest in the outcome of the proceedings must be substantial, i.e., a writ will not issue to enforce a technical, abstract or moot right. (*Thomasson* v. *Jones* (1945) 68 Cal.App.2d 640 [157 P.2d 655]; *Slater* v. *City Council of Los Angeles* (1965) 238 Cal.App.2d 864 [47 Cal.Rptr. 837].) The petitioner also must show his legal rights are injuriously affected by the action being challenged. (*Seven Up Bottling Co.* v. *Superior Court* (1951) 107 Cal.App.2d 75 [236 P.2d 623].)

If the petition reveals the petitioner either lacks the right or standing to sue, it is vulnerable to a general demurrer on the ground it fails to state a cause of action. (*Carsten* v. *Psychology Examining Com., supra*, 27 Cal.3d at p. 796; *Parker* v. *Bowron, supra*, 40 Cal.2d 344, 351; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 894, p. 333.)

■ Braude contends he is a beneficially interested person because he will be personally, detrimentally affected by increased traffic congestion on

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

the Harbor Freeway as he commutes to and from his office downtown. Braude concedes he shares this interest with other regular users of the Harbor Freeway but contends, because downtown commuters are a separate group from commuters on other freeways, Harbor Freeway commuters have an interest over and above the public at large. Braude asserts he need not show an interest unique to him alone to satisfy the requirement of beneficial interest for standing under section 1086.

A review of cases applying the "beneficial interest" standard tend toward a common sense rather than a merely technical approach. The standing determination appears to rest on the particular facts of the case. (*Marlow* v. *Superior Court* (1941) 17 Cal.2d 393 [110 P.2d 11] [standing denied to heirs in heirship proceeding because they could not succeed to any property of the estate]; *Yamada Brothers* v. *Agricultural Labor Relations Bd.* (1979) 99 Cal.App.3d 112 [159 Cal.Rptr. 905] [employer deemed a beneficially interested party to seek judicial review by writ of mandate of A.L.R.B. order extending certification of labor union]; *Fuller* v. *San Bernardino Valley Mun. Wat. Dist.* (1966) 242 Cal.App.2d 52 [51 Cal.Rptr. 120] [property owners in, and creators of, proposed district were beneficially interested in creation of new water district because they were the real parties in interest and because, if created, their formation expenses would be reimbursed]; *Carsten* v. *Psychology Examination Com., supra,* 27 Cal.3d 793 [board member lacked standing to compel board to comply with statutory standards for examination because she neither sought a license nor was in danger of losing one]; *Fritts* v. *Charles, supra,* 145 Cal. 512 [no standing to compel arrest of person accused of illegal gambling]; *Marini* v. *Graham* (1885) 67 Cal.130 [7 P. 442] [no standing to compel city official to abate a street obstruction. Although petitioner's injury was greater in degree due to his proximity to the obstruction, it was not different in kind from that sustained by the public who might use the street].)

The facts of this case are unlike any other we could find defining a beneficial interest. As a general matter, we agree with Braude one need not prove an interest separate, distinct and unique to the person seeking standing under section 1086. Nevertheless, it appears Braude has failed to demonstrate he has an interest not held in common with the public at large, or in any way more compelling than anyone else who may use the Harbor Freeway. Braude shares his beneficial interest with hundreds of thousands of people who use the Harbor Freeway everyday. Additionally, several more hundreds of thousands of people use this route on an occasional basis. It is the preferred or necessary route to the baseball stadium, Chinatown, Pasadena and beyond, or west to the beach communities, to cite only a few examples. Because this section of the freeway is already heavily travelled, the increased traffic resulting from this new building will only have an

incremental effect on the overall traffic in the area, which is already considerable.

In this circumstance it is difficult to discern how Braude's interest is any more or any less than the admittedly large segment of the population who will also be affected by increased traffic congestion in the downtown area of the Harbor Freeway. Thus, while Braude may have a legitimate interest in preventing gridlock, he does not have a beneficial interest over and above the public at large sufficient to have standing to seek relief against the city council by writ of mandate under the general rule of section 1086.

II. *Under Carsten, Braude, by Virtue of His Board Membership, Has Forfeited His Right to Bring Suit as a Citizen-taxpayer.*

■ As an exception to the general rule of standing, there are circumstances under which certain property owners, taxpayers and voters may compel a government instrumentality to comply with its constitutional or statutory duty. The beneficial interest standard is relaxed when the purpose of the writ is enforcement of a clear public duty and the public interest would suffer greatly from a failure to perform such duty. (See, e.g., *Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 98 [162 P.2d 627] [board had standing to seek mandate ordering county auditor to issue duplicate warrants to needy aged person whose originals were lost and uncashed while hospitalized]; *Green* v. *Obledo* (1981) 29 Cal.3d 126 [172 Cal.Rptr. 206, 624 P.2d 256] [petitioners who had successfully challenged portions of a welfare regulation also had standing to challenge remainder of regulation as citizens acting in public interest even though they were not beneficially interested].)

■ Braude asserts there is an important public right to be free from unnecessary and avoidable traffic congestion. He further claims Government Code section 65867.5 creates a public duty not to approve development rights unless the legislative body finds the provisions of the development proposal to be consistent with any general or specific plan for the area.[2] Braude contends, because the public interest is so great, it outweighs any contrary concerns and militates in favor of Braude having standing to assert the public's right. Thus, Braude asserts he should have standing to protect Harbor Freeway travellers from the excess traffic the project will create.

---

[2] Government Code section 65867.5 provides:

"A development agreement is a legislative act which shall be approved by ordinance and is subject to referendum. A development agreement shall not be approved unless the legislative body finds that the provisions of the agreement are consistent with the general plan and any applicable specific plan."

While an ordinary citizen-taxpayer probably could successfully challenge the expenditure of public funds this project will likely require, Braude is foreclosed by the decision in *Carsten* v. *Psychology Examining Com., supra,* 27 Cal.3d 793, from making this same argument. The Supreme Court in *Carsten* performed whatever balancing of policy considerations is required in making a determination of standing for a citizen-taxpayer who is also a board member seeking to sue his own board.

In *Carsten,* a board member sought a writ of mandate to compel the board on which she sat to comply with the statute regulating examinations for psychology licenses. The court recognized there are circumstances under which a citizen-taxpayer may compel a governmental instrumentality to comply with its constitutional or statutory duty. But the court found persuasive legal and policy reasons why an exception to the statutory requirement of beneficial interest should not be carved out for petitioners like Carsten. The court emphasized a number of policy concerns which militate against permitting disgruntled governmental agency members to seek extraordinary writs from the courts. First, it pointed out courts are reluctant to issue advisory opinions in cases where the petitioner can demonstrate no direct interest in the outcome of the litigation. Second, the high court did not want to encourage "narcissistic" litigation in which a petitioner, such as Carsten, cannot lose. The majority noted she was in effect suing herself by suing the board of which she was a member. (27 Cal.3d at p. 798.) Finally, the court stated: "Unquestionably the ready availability of court litigation will be disruptive to the administrative process and antithetical to its underlying purpose of providing expeditious disposition of problems in a specialized field without recourse to the judiciary. Board members will be compelled to testify against each other, to attack members with conflicting views and justify their own positions taken in administrative hearings, and to reveal internal discussions and deliberations. Litigation—even the threat of litigation—is certain to affect the working relationship among board members. In addition, the defense of lawsuits brought by dissident board members—and such suits would undoubtedly be frequent—will severely tax the limited budgetary resources of most public agencies.

"From the vantage point of the judiciary such litigation has ominous aspects. It is purely and simply duplicative, a rerun of the administrative proceedings in a second, more formal forum. The dissident board member, having failed to persuade her four colleagues to her viewpoint, now has to persuade merely one judge. The number of such suits emanating from members on city, county, special district and state boards, will add significantly to court calendar congestion.

"While it is true that this petitioner is not only a board member but also a taxpayer, it is as a board member that she acquired her knowledge of the

events upon which she bases the lawsuit. Her interest in the subject matter was piqued by service on the board, not by virtue of the neutrality of citizenship." (27 Cal.3d at p. 799.) The court concluded "a board member is not a citizen-taxpayer for the purpose of having standing to sue the very board on which she sits." (*Id*. at p. 801.)

In *Green* v. *Obledo, supra*, 29 Cal.3d 126, 145 the Supreme Court reaffirmed the rule in *Carsten* by explaining, "an exception to the statutory requirement of beneficial interest should not be carved out *for a person in this posture*." (Citation deleted, italics in original.)

Unlike Carsten, Braude brought suit in his capacity as an individual. But it would be exalting form over substance to ignore the fact Braude is also a member of the city council who was in the minority on this issue. It would also be imprudent to ignore the possible damaging effects this litigation could have upon the administrative process. Bound as we are by the Supreme Court decision in *Carsten* and the doctrine of stare decisis, we are compelled to find, Braude, as a member of the city council, has forfeited his right to bring a lawsuit as a citizen-taxpayer against the governmental body of which he is a member. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Thus, Braude does not have standing as a citizen-taxpayer to seek an extraordinary writ against the city council of which he is a member.

III.   *Braude Does Not Have Standing to Sue Mayor Tom Bradley for Alleged Illegal Approval of the Ordinance Authorizing the Project.*

Braude has also sued the mayor for the alleged abuse of his discretionary authority to approve or veto the ordinance. (Gov. Code, § 65867.5.) Braude contends he should have standing to challenge the mayor's alleged illegal approval of the project—despite the decision in *Carsten*—because the mayor is an entity separate and distinct from the city council with different duties. Braude attempts to distinguish the decision in *Holtzman* v. *Schlesinger* (2d Cir. 1973) 484 F.2d 1307 relied upon by the majority in *Carsten*.

In *Holtzman*, a United States congresswoman sought declaratory and injunctive relief against the Secretary of Defense alleging the illegality of military activities in Cambodia during the Viet Nam war. The court held she lacked standing, that she had her opportunity to present her views in the proper forum, Congress, and "The fact that her vote was ineffective was due to the contrary votes of her colleagues . . . ." (*Holtzman* v. *Schlesinger, supra*, 484 F.2d at p. 1315.) Even the dissent in *Carsten* agreed the result in *Holtzman* was appropriate because of the constitutional concerns of one branch of government invading the constitutionally endowed power of an

equal and coordinate branch of government. The dissent recognized the nonjusticiability of such political questions. (*Baker* v. *Carr* (1962) 369 U.S. 186 [7 L.Ed.2d 663, 82 S.Ct. 691].)

These very concerns are present in this case. A member of the legislative arm of the city, the city council, is attempting to challenge the discretionary decision of the executive branch of the political subdivision, the mayor. If he were allowed to do so, it would undercut both the letter and the spirit of *Carsten*. Suing the mayor for approving the ordinance would allow Braude to do indirectly what he cannot do directly for substantial policy reasons— seek to compel the city council to rescind its approval of the ordinance. The same rationale should apply in suits against the executive by this type of petitioner as well.

Braude, as a citizen-taxpayer, does not have standing to challenge the mayor's discretionary decision to approve the ordinance.[3]

## DISPOSITION

The judgment is affirmed. Each side to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1991.

---

[3] In the federal context, standing for a person in Braude's posture has been recognized in lawsuits to vindicate the effectiveness of a legislator's vote (*Kennedy* v. *Sampson* (D.C.Cir. 1974) 511 F.2d 430); or to investigate the acts of the executive in relation to possible impeachment (*Mitchell* v. *Laird* (D.C.Cir. 1973) 488 F.2d 611, 613; cf. *Holtzman* v. *Schlesinger, supra*, 484 F.2d at p. 1315, fn. 20). Braude has not and cannot allege the effectiveness of his vote, or any other legislative power he may have, has been impeded by the act of the executive in approving this ordinance. Nor has Braude raised any question of possible impeachment. Thus, an attempt to establish standing as a legislator *qua* legislator would be equally unavailing.