[No. H036624. Sixth Dist. Jan. 4, 2012.]

JOHN G. EISKAMP, Plaintiff and Appellant, v.
PAJARO VALLEY WATER MANAGEMENT AGENCY, Defendant and
Respondent.

COUNSEL

John G. Eiskamp, in pro. per., for Plaintiff and Appellant.

Richards, Watson & Gershon, James L. Markman and Ginetta L. Giovinco for Defendant and Respondent.

OPINION

**MIHARA, Acting P. J.**—After respondent Pajaro Valley Water Management Agency (Agency) enacted three ordinances (ords. Nos. 2002-02, 2003-01, 2004-02) that increased groundwater augmentation charges for the operators of wells in the Agency's jurisdiction, several lawsuits challenging the constitutionality of the ordinances were filed. In 2008, these lawsuits were resolved by a stipulated agreement for entry of judgment. In 2010, appellant John G. Eiskamp filed a complaint against the Agency seeking a declaration that ordinance No. 2002-02 (Ordinance) was invalid, a refund of augmentation charges, and an order directing the Agency to cease collection of the augmentation charges. The trial court sustained the Agency's demurrer to the complaint without leave to amend and entered judgment in favor of the Agency. We hold that the doctrine of res judicata bars relitigation of the causes of action in Eiskamp's complaint and affirm the judgment.

## I. Factual and Procedural Background

On May 31, 2002, the Agency's board of directors (Board of Directors) approved the Ordinance, which established an augmentation charge of $80 per acre-foot for the extraction of groundwater from facilities within the Agency's boundaries. The Board of Directors did not comply with the notice, hearing, and voting requirements of article XIII D, section 6 of the California Constitution. Eiskamp is presently a member of the Board of Directors, and was a member when the Ordinance was approved.

In October 2002, several citizens filed a reverse validation action (Scurich Lawsuit) in which they challenged the validity of the Ordinance.[1] After the Agency's motion to dismiss was granted, the Scurich plaintiffs appealed.

In May 2003, the Board of Directors approved ordinance No. 2003-01, which increased the augmentation charge to $120 per acre-foot. The Board of Directors did not comply with the notice, hearing, and voting requirements of article XIII D, section 6 of the California Constitution.

In July 2003, the Agency filed an action entitled *Pajaro Valley Water Management Agency v. All Persons Interested in the Matter of the Validity of Pajaro Valley Water Management Ordinance 2003-01* (Amrhein Lawsuit). (Italics added.) In February 2004, the Amrhein Lawsuit came on for trial.

---

[1] The plaintiffs in this lawsuit were James P. Scurich, John E. Eiskamp (appellant's son), Vincent J. Gizdich III, Dick Peixoto, and William J. McGrath.

In May 2004, this court held in an unpublished decision "that the augmentation fee was only partly a 'capacity charge' and that insofar as it was not such a charge, the plaintiffs' objections were not subject to the special statute of limitations." (*Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364, 1376 [59 Cal.Rptr.3d 484] (*Amrhein*).) Thus, this court reversed the judgment to allow the plaintiffs to challenge that portion of the augmentation charges that were not used to fund capital facilities construction. The Scurich Lawsuit was then stayed pending the outcome of the Amrhein Lawsuit.

In August 2004, the trial court entered judgment in the Amrhein Lawsuit in favor of the Agency. Shortly thereafter, the Amrhein defendants filed an appeal in this court.

In November 2004, the Board of Directors adopted ordinance No. 2004-02, which increased the augmentation charge to $160 per acre-foot. The Board of Directors did not comply with the notice, hearing, and voting requirements of article XIII D, section 6 of the California Constitution.

In January 2005, Harold Griffith filed a lawsuit challenging ordinance No. 2004-02 and other actions of the Agency in *Griffith v. Pajaro Valley Water Management Agency* (Griffith Lawsuit). About three weeks later, the San Andreas Mutual Water Company and others, including the Amrhein defendants, filed a lawsuit challenging ordinance No. 2004-02 in *San Andreas Mutual Water Co. v. Pajaro Valley Water Management Agency and All Persons Interested in the Matter of the Validity of the Pajaro Valley Water Management Agency Ordinance No. 2004-2* (San Andreas Lawsuit).

The Griffith and San Andreas Lawsuits were consolidated with the Scurich Lawsuit under case No. 144843 (Consolidated Lawsuits).

In July 2006, this court affirmed the judgment in the Amrhein Lawsuit. After the Amrhein defendants filed a petition for rehearing, this court granted the petition to consider the effect of *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205 [46 Cal.Rptr.3d 73, 138 P.3d 220]. In May 2007, this court reversed the judgment, finding that "the augmentation fee is a fee or charge 'imposed . . . as an incident of property ownership' and thus subject to constitutional preconditions for the imposition of such charges . . . (Cal. Const., art. XIII D, § 2, subd. (e), added by initiative, Gen. Elec. (Nov. 5, 1996) . . .)," and that the Agency had failed to comply with these preconditions. (*Amrhein, supra,* 150 Cal.App.4th at p. 1370, citation omitted.)

In October 2007, the Board of Directors repealed ordinances Nos. 2003-01 and 2004-02.

In January 2008, the Scurich plaintiffs, the San Andreas plaintiffs, Harold Griffith, and the Amrhein defendants wanted to resolve all disputes in the Amrhein Lawsuit and the Consolidated Lawsuits. They and the Agency then entered into a stipulated agreement for entry of judgment (stipulated agreement). The stipulated agreement provided: "all matters raised in the Consolidated Lawsuits and the Amrhein Lawsuit (collectively the 'Pending Litigation') as to the Agency's actions shall be resolved by entry of judgment in the Pending Litigation"; the Agency would pay $1.8 million to the Scurich plaintiffs, the San Andreas plaintiffs, Harold Griffith, and the Amrhein defendants for legal fees, costs, and expenses; and the augmentation charges collected pursuant to ordinances Nos. 2003-01 and 2004-02 would be refunded. It also stated that the "settlement extinguishes any and all claims arising out of the Pending Litigation all issues, transactions and/or related claims or actions including all claims that the parties have made or could have made with respect to the validity of any Augmentation Charge or Management Fee ordinances currently in effect . . . ." The stipulated agreement did not provide for either the repeal of the Ordinance or the refund of augmentation charges imposed under the Ordinance.

In February 2008, judgment was entered pursuant to the terms of the stipulated agreement.

In August 2010, Eiskamp filed a complaint against the Agency for declaratory relief and a petition for writ of mandate. The complaint alleged that Eiskamp was a member of the public and the owner of three parcels of real property within the Agency's jurisdiction. The complaint further alleged that the Board of Directors established the augmentation charge of $80 per acre-foot without complying with the notice, hearing, and voting requirements of article XIII D, section 6 of the California Constitution, thus rendering the Ordinance void. In May 2009, Eiskamp paid $9,024.39 and $5,516.96 that had been levied pursuant to the Ordinance in connection with two parcels of his real property. He then submitted written claims to the Agency for refunds of these amounts. These claims were deemed denied. In July 2010, the Agency sent bills to Eiskamp for augmentation charges for three parcels of his real property. The complaint sought refund of the amounts that Eiskamp had paid and an order directing the Agency to cease collecting the augmentation charges under the Ordinance.

The Agency filed a demurrer to the complaint and a request for judicial notice in support of the demurrer. Following a hearing, the trial court

sustained the demurrer without leave to amend. Judgment was then entered in favor of the Agency, and Eiskamp filed a timely appeal.

## II. Discussion

In reviewing an order sustaining a demurrer, " 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We may also consider matters that have been judicially noticed. [Citations.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920].) "Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. [Citation.]" (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].)

The Agency contends that the trial court properly sustained the demurrer on the ground that Eiskamp lacked standing to maintain an action for a writ of mandate. Relying on *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793 [166 Cal.Rptr. 844, 614 P.2d 276] (*Carsten*) and *Braude v. City of Los Angeles* (1990) 226 Cal.App.3d 83 [276 Cal.Rptr. 256] (*Braude*), the Agency asserts that Eiskamp forfeited his right as a citizen-taxpayer to maintain the present action because he is as a member of the Board of Directors.

In *Carsten*, the appellant was a member of the psychology examining committee of the Board of Medical Quality Assurance (board). (*Carsten, supra*, 27 Cal.3d at p. 795.) She filed a petition for writ of mandate in which she sought to challenge the legality of the board's action in adopting a new method for testing license applicants. (*Ibid.*) *Carsten* recognized that under Code of Civil Procedure section 1086, "[t]he requirement that a petitioner be 'beneficially interested' has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.] As Professor Davis states the rule: 'One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable.' (Davis, 3 Administrative Law Treatise (1958) p. 291.)" (*Carsten*, at pp. 796–797.) *Carsten* concluded that since the appellant was "neither seeking a psychology license, nor in danger of losing any license she

possess[ed] under the rule adopted by the board, she [was] not a beneficially interested person within the meaning of the statute." (*Id.* at p. 797.)

■ *Carsten* also acknowledged that taxpayers have standing to challenge a governmental agency's expenditure of public funds, but concluded that the appellant lacked standing under this theory. (*Carsten, supra,* 27 Cal.3d at p. 798.) *Carsten* observed that since the appellant did not have a beneficial interest in the litigation, the court would be providing an advisory opinion. (*Ibid.*) ■ The court further pointed out that when a party sues a governmental agency for which she is a board member, she is "both plaintiff and defendant in the same litigation." (*Ibid.*) *Carsten* then focused on the "policy issues which militate against permitting disgruntled governmental agency members to seek extraordinary writs from the courts. Unquestionably the ready availability of court litigation will be disruptive to the administrative process and antithetical to its underlying purpose of providing expeditious disposition of problems in a specialized field without recourse to the judiciary. Board members will be compelled to testify against each other, to attack members with conflicting views and justify their own positions taken in administrative hearings, and to reveal internal discussions and deliberations." (*Id.* at p. 799.) Thus, *Carsten* held that "a board member is not a citizen-taxpayer for the purpose of having standing to sue the very board on which she sits." (*Id.* at p. 801.)

In *Braude,* the appellant was a member of the respondent city council, a taxpayer, and a commuter on the respondent's freeways. (*Braude, supra,* 226 Cal.App.3d at p. 86.) The appellant brought a petition for writ of mandate to order the respondent to set aside an ordinance approving a project to build two office buildings. (*Ibid.*) He argued that he was a beneficially interested person for purposes of standing because he would be detrimentally affected in his daily commute by increased traffic on the Harbor Freeway as a result of the project. (*Id.* at p. 88.) *Braude* rejected this argument, noting that the appellant shared "his beneficial interest with hundreds of thousands of people who use the Harbor Freeway everyday . . . [and] several more hundreds of thousands of people [who] use this route on an occasional basis," and thus he did "not have a beneficial interest over and above the public at large." (*Id.* at pp. 88–89.) Relying on *Carsten, supra,* 27 Cal.3d 793, *Braude* also held that the appellant, as a member of the respondent's city council, had forfeited his right to bring an action as a citizen-taxpayer. (*Braude,* at p. 91.)

Here, unlike the appellants in *Carsten* and *Braude,* Eiskamp has a "direct and substantial" beneficial interest to be protected. (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166 [127

Cal.Rptr.3d 710, 254 P.3d 1005].) He is the owner of three parcels of real property within the Agency's jurisdiction, and the Agency has imposed augmentation charges in connection with each of these parcels. Thus, though Eiskamp is a member of the Board of Directors, he has standing to pursue the present writ of mandate.

The Agency contends, however, that the present action is barred by the doctrine of res judicata. We agree.

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297].)

In considering this issue, we note that "[a] validation action implements important policy considerations. '[A] central theme in the validating procedures is speedy determination of the validity of the public agency's action.' [Citation.] 'The text of section 870 and cases which have interpreted the validation statutes have placed great importance on the need for a single dispositive final judgment.' [Citation.]" (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 842 [73 Cal.Rptr.2d 427].)

A validation proceeding is "in the nature of a proceeding in rem." (Code Civ. Proc., § 860.) Thus, "[t]he judgment in a proceeding brought under the general validation procedure is 'binding and conclusive . . . against the agency *and against all other persons* . . . .' (Code Civ. Proc., § 870, subd. (a), italics added.) Because the proceeding is in the nature of an action against the entire world, '[j]urisdiction of all interested parties may be had by [newspaper] publication of summons . . .' and such other notice as the court may order. (*Id.*, § 861.) More importantly, the general validation procedure is broad enough to include actions to *invalidate* public agency matters (sometimes called reverse validation actions). Code of Civil Procedure section 863 permits '*any interested person* [to] bring an action . . . to determine the validity of [the] matter' (italics added), and the phrase 'any interested person' might of course include a party contesting the matter in question." (*Bonander v. Town of Tiburon* (2009) 46 Cal.4th 646, 656 [94 Cal.Rptr.3d 403, 208 P.3d 146].)

Here, the Scurich plaintiffs filed a reverse validation action in 2002 in which they challenged the validity of the Ordinance. This court "validat[ed] the $80 Augmentation Charge . . . to the extent that the charge [was] used to fund capital facilities construction," but held that the statute of limitations did not bar the Scurich plaintiffs from challenging the Ordinance to the extent

that the charges were used for other expenditures. Eiskamp is now seeking to challenge all of the augmentation charges imposed under the Ordinance. We will assume that Eiskamp could amend the complaint to challenge only that portion of the augmentation charges that were used for other expenditures, thereby avoiding the statute of limitations. If no other litigation involving the augmentation charges imposed by the Agency had occurred, res judicata would not apply and the amended complaint would state facts sufficient to constitute a cause of action.

However, in 2003, the Agency filed a validation proceeding (the Amrhein Lawsuit) to determine whether ordinance No. 2003-01 was valid.[2] The Scurich Lawsuit was then stayed pending the outcome of the Amrhein Lawsuit. After the judgment in the Amrhein Lawsuit was reversed on the ground that the Agency failed to comply with constitutional requirements, the Scurich plaintiffs, the San Andreas plaintiffs, Harold Griffith, the Amrhein defendants, and the Agency entered into a stipulated agreement that provided that "all matters raised in the Consolidated Lawsuits and the Amrhein Lawsuit (collectively the 'Pending Litigation')" would be resolved by entry of judgment. The stipulated agreement also stated that "this settlement extinguishes any and all claims arising out of the Pending Litigation all issues, transactions and/or related claims or actions including all claims that the parties have made or could have made with respect to the validity of any Augmentation Charge or Management Fee ordinances currently in effect . . . ." The stipulated agreement did not require either the repeal of the Ordinance or the refund of augmentation charges imposed under the Ordinance. Thus, the stipulated agreement resolved the issue that Eiskamp now raises, that is, the validity of the augmentation charges imposed under the Ordinance, in favor of the Agency. Since the pending litigation was a validation proceeding, the judgment entered pursuant to the stipulated agreement was "binding and conclusive . . . against the agency and against all other persons" (Code Civ. Proc., § 870, subd. (a)), including Eiskamp.[3] Accordingly, Eiskamp is barred from relitigating the same issues that were resolved in the pending litigation.[4]

In sum, the trial court properly sustained the demurrer to the complaint and entered judgment in favor of the Agency.

---

[2] Eiskamp concedes that there are "no legal differences" between the Ordinance and ordinances Nos. 2003-01 and 2004-02.

[3] Eiskamp does not contend that the Agency failed to comply with the notification requirements for a validation proceeding (Code Civ. Proc., § 861).

[4] Eiskamp cites several federal cases on res judicata, collateral estoppel, privity, and stare decisis for the proposition that he is entitled to challenge the Agency's collection of the augmentation charges that were held invalid in *Amrhein, supra*, 150 Cal.App.4th 1364. However, his contentions rely on the premise that the judgment in the pending litigation did not apply to him.

## III.  Disposition

The judgment is affirmed.

Duffy, J.,* and Walsh, J.,† concurred.

A petition for a rehearing was denied February 2, 2012, and appellant's petition for review by the Supreme Court was denied May 9, 2012, S200039.

---

*Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.