Filed 7/17/25  Spencer v. Dept. of Corrections and Rehabilitation CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDWARD B. SPENCER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>Defendant and Respondent. | F088755<br><br>(Super. Ct. No. 22C-0272)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

Edward B. Spencer, in propria persona, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Maria G. Chan and Lucas L. Hennes, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

Edward B. Spencer, a self-represented litigant in the custody of the Department of Corrections and Rehabilitation (CDCR), filed a petition for writ of mandate in the superior court seeking to compel CDCR to provide him with a statutorily mandated

**SEE DISSENTING OPINION**

committee review of his application for meritorious sentence reduction. CDCR moved for summary judgment on the ground that Spencer lacked beneficial interest standing because he was not eligible for parole until 2184. The trial court granted the motion.

Spencer appeals, arguing he has either beneficial interest or public interest standing, and the trial court erred in not continuing the hearing so he could provide evidence of a potential change in his parole eligibility date. Finding no merit to Spencer's arguments, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Spencer, who is serving four consecutive life sentences with a minimum eligible parole date of 2184, filed a petition for writ of mandate in July 2022.[1] After demurrers were sustained to his original, first, and second petitions, Spencer filed a third amended petition naming CDCR as respondent.[2] Spencer alleged he submitted a request for meritorious sentence reduction in February 2020 that was denied without review by a classification committee.[3] Spencer asserted CDCR had a ministerial duty to have a

---

[1] The minimum eligible parole date is the earliest date on which a person sentenced to an indeterminate term may legally be released on parole. (Cal. Code Regs., tit. 15, § 3000.)

We refer to the California Code of Regulations as the "Regulations" or "Regs." All further references to the California Code of Regulations are to title 15.

[2] Spencer also named Jeffrey Macomber, CDCR's Secretary, and Warden T. Cisneros as respondents, but they were dismissed from the case before the third amended petition was filed.

[3] Meritorious sentence reduction is set forth in Penal Code section 2935, which provides: "Under the guidelines prescribed by the rules and regulations of the director, the Secretary of the Department of Corrections and Rehabilitation may grant up to 12 additional months of reduction of the sentence to a prisoner who has performed a heroic act in a life-threatening situation, or who has provided exceptional assistance in maintaining the safety and security of a prison."

Regulations section 3043.6 sets out the guidelines for awarding meritorious sentence reduction, which the regulation calls extraordinary conduct credit. (Regs., § 3043.6, subd. (a).) For an incarcerated person sentenced to an indeterminate term with

2.

classification committee review his request, but it failed to perform that duty as required by Regulations section 3376, subdivision (d)(3)(C).[4] Spencer sought a writ of mandate compelling respondents to immediately comply with this regulation and a declaration that respondent has a legal duty to comply with the regulation as it applies to review of his application.

After unsuccessfully demurring to the third amended petition, CDCR filed an answer. As affirmative defenses, CDCR (1) denied that it violated any ministerial duty and (2) asserted that Spencer lacked standing because he did not have a clear beneficial right or interest at stake, as the 12 months of meritorious sentence reduction he was seeking would have no bearing on his incarceration since his minimum eligible parole date was in 2184.

In June 2024,[5] CDCR filed a motion for summary judgment on the sole ground that Spencer lacked standing because he did not have a beneficial interest in the outcome of his petition. CDCR asserted four facts to be true: (1) Spencer is a CDCR prisoner; (2) his sole claim is that CDCR was obligated to convene a classification committee to review his request for meritorious sentence reduction and failed to do so; (3) Spencer is currently serving four consecutive life sentences; and (4) the earliest Spencer could be legally released on parole is December 13, 2184.[6]

---

the possibility of parole, the award of such credit advances the person's initial parole hearing date. (Regs., § 3043.6, subd. (b).)

[4] This subdivision provides: "(3) Institution and Facility Classification Committees shall: [¶] … [¶] (C) Review incarcerated person requests for meritorious sentence reduction to determine compliance with Penal Code section 2935." (Regs., § 3376, subd. (d)(3)(C).)

[5] Further references to dates are to dates in the year 2024, unless otherwise stated.

[6] Although CDCR filed a memorandum of points and authorities and a separate statement of undisputed material facts in support of the motion, those documents are not in the appellate record. The four facts are taken from CDCR's reply in support of the summary judgment motion.

Spencer opposed the motion but admitted each of CDCR's facts. Spencer asserted he had beneficial interest standing because: (1) he had a beneficial right to be brought before the classification committee to have his claim for meritorious sentence reduction reviewed; (2) he had a beneficial right to performance of that duty; and (3) multiple life sentences were "symbolic" because he did not have more than one lifetime and he had "a direct benefit because taken symbolically removing one year time in recognition of his exemplary act in coming to the aid of another inmate in a life threatening situation the reward of this one year is a symbolic reward for [Spencer's] behavior."

Spencer submitted a separate statement of the following five "disputed material facts": (1) CDCR failed to bring him before the classification committee to have his request reviewed; (2) CDCR was asking the court to adjudicate a hypothetical situation by implicating he was currently serving four consecutive life sentences; (3) CDCR was attempting to rewrite clear statutory terms and obligations, as he was an indeterminate inmate sentenced to life with the possibility of parole; (4) while CDCR cited *People v. Franklin* (2016) 63 Cal.4th 261, 276, for the proposition that there is no basis to distinguish between an inmate serving a life sentence without the possibility of parole and a person serving sentences that exceed his normal life expectancy, that court did not elaborate on what it meant for a sentence to be the functional equivalent of a life without the possibility of parole sentence; and (5) he demonstrated he was beneficially interested in issuance of the writ of mandate as he described in detail in the petition how CDCR failed to perform its mandatory duty. Spencer submitted his declaration in support of these facts.

In reply, CDCR asserted that Spencer failed to establish any genuine dispute of material fact. CDCR argued Spencer failed to rebut the four facts in CDCR's statement of undisputed material facts and while he offered his own separate statement, only one of the disputed facts was a factual statement—that CDCR failed to bring him before a classification committee—while the other four were conclusory arguments. CDCR

contended Spencer's argument that he was entitled to "symbolic" relief was insufficient to confer standing, and his argument that he was seeking committee review regardless of the hypothetical outcome was spurious because he would gain no benefit even if the court ordered CDCR to perform a committee review. CDCR concluded by arguing Spencer, who admitted he was legally required to serve another 150 years in prison before being eligible for parole, lacked standing because removing one year of his sentence would have no meaningful impact and there was no possible benefit he would obtain from the review he sought.

A hearing on the summary judgment motion was held on September 18, at which the parties appeared and argued.[7] On September 25, the trial court issued a written order granting the motion. The trial court found: (1) Spencer sought an order compelling CDCR to comply with its mandatory duty to have his request for meritorious sentence reduction heard by the appropriate committee; (2) CDCR, which conceded Spencer was not brought before a classification committee to review his request, argued that even if there were such a duty, Spencer lacked standing because he had no direct beneficial interest in the outcome of his petition; and (3) "[Spencer]'s four consecutive life sentences means that even if [CDCR] complied with its duty and [Spencer]'s request was granted for the full one-year credit, [Spencer] will gain no direct benefit (in the form of an actually reduced custodial period) from the writ's issuance."

The trial court noted that at the hearing on the summary judgment motion, Spencer: (1) asserted he had a hearing before the Board of Parole Hearings (board) scheduled for October 22, when he would be considered for release within five years; and (2) represented the failure of any committee to conduct the required review meant there would be no evidence of his exemplary behavior before the board. The trial court further

---

[7]     There is no reporter's transcript of the hearing in the appellate record because Spencer elected to proceed without one.

noted CDCR objected to this argument on the grounds that Spencer did not make this argument, or produce evidence in support of it, in his opposition to the motion.

In addressing Spencer's assertions, the trial court recognized there was no evidence in the record of the upcoming board hearing or the scope of that hearing, and no evidence that Spencer's inmate records completely lacked documentation of his exemplary behavior subject to board review. As such, the trial court found: "Stating that a fact is in dispute, without more, is insufficient to oppose a motion for summary judgment." The trial court further noted Spencer did not submit a timely request to continue the motion.

Finally, the trial court rejected Spencer's argument that he would gain a "symbolic" benefit from issuance of the writ. While the trial court was mindful that recognition for exemplary behavior may serve a psychological benefit to an inmate, Spencer did not cite any authority, and the court found none, "for the proposition that such symbolic recognition is the type of benefit that confers standing for a writ of mandate proceeding or that an exception to the direct and beneficial interest requirement exists here." In sum, the trial court found Spencer's " 'symbolic' benefit appears to be the type of 'abstract' benefit that deprives him of standing in this writ action."

Spencer filed a notice of appeal from the September 25 order on October 7. Judgment was entered on October 14.[8]

---

[8] "It is well established that an order granting summary judgment is a nonappealable order and, accordingly, [Spencer]'s notice of appeal is premature." (*Archer v. Coinbase, Inc.* (2020) 53 Cal.App.5th 266, 271, fn. 2.) "In the interest of justice and to avoid delay, we exercise our discretion to construe the notice of appeal as an appeal from the judgment." (*Ibid.*; Cal. Rules of Court, rule 8.104(d)(2).)

# DISCUSSION

## I. Standard of Review

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Under Code of Civil Procedure[9] section 437c, subdivision (c), a motion for summary judgment must be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, we must decide whether CDCR has conclusively negated a necessary element of Spencer's claim or has established an affirmative defense and has demonstrated no material issue of fact requires a determination at trial. (§ 437c, subd. (*o*); *Guz*, at p. 334.)

## II. The Absence of a Beneficial Interest

To have standing to petition for a writ of mandate, a petitioner is "generally required to have a direct and substantial beneficial interest." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1248; § 1086 [writ issued "upon … petition of the party beneficially interested"].) That means a petitioner "must plead an actual justiciable controversy and have some 'special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' " (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 738.)

A petitioner must show " 'he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.' " (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 599.) Further, "[t]he beneficial interest must be direct and substantial" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165), and cannot be "technical, abstract or moot" (*Braude v. City of Los Angeles* (1990)

---

**9** Undesignated statutory references are to the Code of Civil Procedure.

226 Cal.App.3d 83, 87).  In contrast, a petitioner has no beneficial interest within the meaning of section 1086 if he or she "will gain no direct benefit from [the writ's] issuance and suffer no direct detriment if it is denied."  (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232.)  That is the case here.

As CDCR argues, Spencer does not have standing to seek a writ ordering it to consider a request for meritorious sentence reduction because he would not gain any direct benefit from such a writ.  Meritorious sentence reduction, or extraordinary conduct credit, may be awarded "to a prisoner who has performed a heroic act in a life-threatening situation, or who has provided exceptional assistance in maintaining the safety and security of a prison."  (Pen. Code, § 2935; Regs., § 3043.6, subd. (a).)  While an incarcerated person sentenced to an indeterminate term with the possibility of parole may be awarded an extraordinary conduct credit, the credit cannot be awarded to persons sentenced to death or a term of life without the possibility of parole.  (Regs., § 3043.6, subds. (a) & (b).)  An incarcerated person's request for meritorious sentence reduction is reviewed by "Institution and Facility Classification Committees" to determine compliance with Penal Code section 2935.  (Regs., § 3376, subd. (d)(3)(C).)

Even if Spencer is entitled to a committee review of his request, and even if the committee granted the request, Spencer would not derive any benefit because his minimum parole eligibility date is in the year 2184.  Since Spencer will not be eligible for parole in his lifetime, his sentence is the equivalent of life without the possibility of parole.  (*People v. Franklin*, *supra*, 63 Cal.4th at pp. 275–276 [" 'there is no basis for distinguishing … between an inmate serving a life sentence without possibility of parole and a person serving several sentences of a number of years, the total of which exceeds his normal life expectancy' "], citing *Sumner v. Shuman* (1987) 483 U.S. 66, 83.)  Because Spencer's sentence is functionally one for life without the possibility of parole, the 12 months of meritorious sentence reduction Spencer seeks would have no bearing on

8.

his incarceration.  Therefore, the question of whether he is entitled to a committee hearing on his request for sentence reduction is entirely academic—he will never be released from prison regardless of whether he becomes eligible for parole in 2184 or one year earlier in 2183.  Accordingly, Spencer lacks standing to pursue a writ of mandate, as he will not gain a direct benefit from the writ's issuance or suffer any direct detriment if it is denied.  (*Waste Management of Alameda County, Inc. v. County of Alameda*, *supra*, 79 Cal.App.4th at p. 1232.)

Spencer argues he would gain direct benefit because courts "everyday are allowing multiple life sentences incarcerated individuals released from custody."  But Spencer offers no evidence or authority that he is subject to any sentence-reducing laws or could otherwise be released from custody despite serving multiple life sentences.  Because Spencer cannot show he has suffered, or will suffer, a concrete and personal injury, he lacks standing to maintain this action.

## III.    Public Interest Standing

Spencer argues for the first time on appeal that even if he does not meet the beneficial interest standard under section 1086, he is entitled to public interest standing, which is a "judicially recognized 'exception to … the usual requirement of a beneficial interest.' " (*Weatherford v. City of San Rafael*, *supra*, 2 Cal.5th at p. 1249.)  This exception allows "petitioners to seek relief where ' " 'the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty.' " ' " (*Id*. at p. 1248.)  In that situation, the petitioner " " 'need not show … any legal or special interest in the result, since it is sufficient that [the party] is interested as a citizen in having the laws executed and the duty in question enforced.' " " (*Green v. Obledo* (1981) 29 Cal.3d 126, 144.)  Public interest standing exists where the challenged government policy would otherwise "be effectively insulated from judicial review." (*Weiss v. City of Los Angeles* (2016) 2 Cal.App.5th 194, 206.)

9.

To determine public interest standing, " '[t]he courts balance the applicant's need for relief (i.e., [the applicant's] beneficial interest) against the public need for enforcement of the official duty.  When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced.' " (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1174.)  "No party … may proceed with a mandamus petition as a matter of right under the public interest exception.…  'Judicial recognition of citizen standing is an exception to, rather than repudiation of, the usual requirement of a beneficial interest.  The policy underlying the exception may be outweighed by competing considerations of a more urgent nature.' " (*Save the Plastic Bag Coalition v. City of Manhattan Beach*, *supra*, 52 Cal.4th at p. 170, fn. 5.)  Thus, "where the claim of 'citizen' or 'public interest' standing is driven by personal objectives rather than 'broader public concerns,' a court may find the litigant to lack such standing." (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1057.)

Spencer never raised public interest standing in the trial court, and therefore it cannot be considered for the first time on appeal.  "Though this court is bound to determine whether [CDCR] met [its] threshold summary judgment burden independently from the moving and opposing papers, we are not obligated to consider arguments or theories, including assertions as to deficiencies in [CDCR's] evidence, that were not advanced by [Spencer] in the trial court.  'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments.  [Citation.]  An argument or theory will … not be considered if it is raised for the first time on appeal.  [Citation.]  Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal.  [Citation.]  Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' [Citation.]  'A party

10.

is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.)  Since Spencer did not argue that he had public interest standing in his opposition to CDCR's summary judgment motion, and the record does not show that he made the argument at the hearing on the motion, he has forfeited this argument.

Even if he had raised this argument below, we would reject it.  Spencer's petition is driven by his personal objective to obtain committee review of his application for meritorious sentence reduction so he may receive sentence credit, rather than by broader public concerns that other incarcerated persons are being deprived such review.  He does not allege that CDCR had a policy of denying incarcerated persons committee review of applications for meritorious sentence credit.  Instead, he seeks meritorious sentence credit for himself and claims CDCR failed to follow the appropriate procedure for reviewing his application.  Spencer's interest in obtaining meritorious sentence credit for himself is not an issue of public concern.  Moreover, he does not show the existence of a weighty public need for enforcement of a duty.

Finally, Spencer does not explain how incarcerated persons' challenges to a failure to review applications for meritorious sentence credit would be insulated from judicial review if his mandamus petition were dismissed based on his lack of standing.  If a beneficially interested prisoner believes his or her actions warranted meritorious sentence credit, CDCR's administrative grievance process provides a mechanism for review. (Regs., § 3480 et. seq.)  And if that prisoner contends CDCR violated a ministerial duty with respect to such review, they may initiate a petition for writ of mandate.  (§§ 1085, 1086.)  Because Spencer's claim does not qualify for the public interest exception doctrine, he lacks standing to maintain his petition for writ of mandate.  Accordingly, the trial court did not err in granting summary judgment to CDCR.

11.

## IV.   The Failure to Continue Hearing

Spencer asserts he informed the trial court during the hearing on the summary judgment motion that he had an initial consultation with the "Board of Hearing" on October 22, but the trial court did not consider his assertion when ruling on the motion. Spencer argues the trial court should have set another hearing to allow him to submit his evidence, which he asserts consists of board hearing documents that he obtained about four days before the September 18 hearing.

As CDCR points out, Spencer has forfeited this claim because he did not make " 'some cogent argument supported by legal analysis and citation to the record' " in his opening brief.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146; Cal. Rules of Court, rule 8.204(a)(1).)  Spencer's argument that the trial court should have continued the hearing is devoid of citation to authority or to the record.  The failure to provide any basis on which we could rule in his favor forfeits the argument.

In any event, "[a] party cannot defeat summary judgment by the expedient of averring he or she has evidence to support a cause of action; instead, such evidence must be presented in opposition to summary judgment." (*Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 616.)  Spencer claims he has evidence that he may be considered for parole sooner than his minimum eligible parole date of 2184, but he did not present that evidence to the trial court.  Moreover, he did not move to continue the hearing to allow him to provide further evidence or briefing.  (See, e.g., § 437c, subd. (h) [an application to continue the summary judgment motion to obtain necessary discovery may be made by ex parte motion at any time on or before the date the opposition response to the motion is due].)  Spencer also did not seek reconsideration of the trial court's order based on his purported new evidence.  (§ 1008.)  Moreover, issues cannot be raised for the first time on appeal.  (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1309.)  Spencer's failure to raise this issue properly before the trial court precludes him from raising it now.

12.

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal.


                                        DE SANTOS, J.

I CONCUR:


DETJEN, Acting P. J.


13.

FRANSON, J. Dissenting.

I respectfully dissent.  The moving papers of the Department of Corrections and Rehabilitation (CDCR) take too narrow of a view of the benefits Spencer might obtain from a meritorious sentence reduction under Penal Code section 2935.  The papers addressed only the impact on Spencer's parole eligibility date and omitted the impact it might have on Spencer's classification and conditions of confinement, such his custody level, privileges, and work and educational programming.  The facts about the potential impact on Spencer's classification and conditions of confinement are *material* to whether he has a beneficial interest in having his application for a meritorious sentence reduction reviewed by a classification committee.  By omitting these material facts, the CDCR failed to comply with Code of Civil Procedure section 437c and California Rules of Court, rule 3.1350(d).  As a result of this failure, the order granting the motion for summary judgment should be vacated and the judgment reversed.

I.      THE MOVING PARTY'S BURDEN

Here, CDCR has successfully completed the first step of the summary judgment analysis, which is identifying an issue framed by the pleading that can be the basis for a showing that there is no factual basis for relief under Spencer's cause of action.  (See *Diamond v. Schweitzer* (2025) 110 Cal.App.5th 866, 878–879 [first step is framing the issues].)  The issue framed is whether Spencer has standing to pursue his petition for writ of mandate—more specifically, whether he has the requisite beneficial interest at stake.

The second step of the summary judgment analysis requires the court to determine whether the moving party has carried its initial burden of production and made "a prima facie showing of the nonexistence of any triable issue of material fact."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; *Diamond v. Schweitzer*, *supra*, 110 Cal.App.5th at p. 879.)  To make this showing, the moving party must "(1) accurately

identify the facts that are material to the legal theory upon which the motion is based; (2) actually include those material facts in the separate statement [of undisputed material facts]; and (3) reference evidence establishing, either directly or by inference, each material fact the moving party claims is undisputed. (See *AMCO Ins. Co. v. All Solutions Ins. Agency, LLC* (2016) 244 Cal.App.4th 883, 904, fn. 8 [judgment reversed]; *Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 632 [judgment reversed].)" (*Pierson v. Helmerich & Payne International Drilling Co.* (2016) 4 Cal.App.5th 608, 617.)

When a moving party fails to carry the burden of making the required prima facie showing, courts do not reach the third step of the summary judgment analysis and consider whether the opposing party has demonstrated the existence of a triable issue of material fact. (See *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602, 1606.)

II.   CDCR'S MOVING PAPERS

The respondent's brief states "CDCR filed a motion for summary judgment on the sole ground that Spencer lacked standing to bring the petition because he lacked a beneficial interest in the outcome." To support its legal theory, CDCR "asserted four facts to be true: (1) Spencer is a CDCR prisoner; (2) his sole claim is that CDCR was obligated to convene a classification committee to review his request for meritorious sentence reduction and failed to do so; (3) Spencer is currently serving four consecutive life sentences; and (4) the earliest Spencer can be legally released on parole is December 13, 2184." In his statement of undisputed facts, Spencer "agreed" with each of these four facts.

The facts provided by the CDCR's moving paper imply a meritorious sentence reduction's only impact on Spencer's interests would be to "advance [Spencer's] initial parole hearing date" because he was "sentenced to an indeterminate term with the

2

possibility of parole." (Cal. Code Regs., tit. 15, § 3043.6, subd. (b).)[1] CDCR's moving papers do not address and, thus, do not demonstrate a meritorious sentence reduction would have no impact on Spencer's other interests, such as his classification, his conditions of confinement, or his eligibility for educational and other programs.

III.   CLASSIFICATION OF INCARCERATED PERSONS

When the CDCR receives a newly convicted felon, a CDCR Form 839 (rev. 07/24), CDCR Classification Score Sheet, must be prepared in accordance with Regulations section 3375.3. (Regs., § 3375, subd. (j).) The classification process continues throughout the time an individual remains in the CDCR's custody. (Regs., § 3375, subds. (a), (k).) In particular, 12 months after the incarcerated person physically arrived at a CDCR reception center and annually thereafter, a CDCR Form 840 (rev. 03/25), CDCR Reclassification Score Sheet, must be prepared in accordance with Regulations section 3375.4. (Regs., § 3375, subd. (k)(1)(A).)

The classification process for incarcerated persons also is addressed in article 5 of chapter 6 of the CDCR's operations manual. Under the classification system, inmates are placed "according to their classification score based on objective information and criteria unless case factors or departmental requirements indicate otherwise." (Cal. Dept. of Corrections and Rehabilitation, Operations Manual (Jan. 1, 2024) § 62010.1 (DOM).) In other words, the incarcerated person's placement score determines the security level of the facility to which the person is assigned. (Regs., § 3375.1, subd. (a).) Here, we know Spencer is placed at the Substance Abuse Treatment Facility in Corcoran because the CDCR's answer admits that fact.

More than just placement is addressed by the classification process. "All decisions affecting an inmate's institutional placement, *participation in programs* and

―――――――――――――――――

[1]     Subsequent references to "Regulations" or "Regs." are to title 15 of the California Code of Regulations.

3

*degree of custody* shall be through the classification process." (DOM § 62010.1, italics added.) The designations for the various degrees of custody are set forth in Regulations section 3377.1, subdivision (a). Here, we do not know Spencer's degree of custody because it is not addressed by the writ petition, the answer, or the CDCR's moving papers.

The assignment of an incarcerated person to a work group and privilege group is addressed by Regulations section 3044. Work groups are designated A-1, A-2, B, C, D-1, D-2, F, M, U. (Regs., § 3044, subd. (b)(1)–(9).) Privilege groups are designated A, B, C, D, U, AS. (Regs., § 3044, subd. (d)–(i).) We do not know the work and privilege groups to which Spencer is assigned because those facts were not included in the CDCR's moving papers.

Classification committees perform an integral part of the classification process. Regulations section 3376, subdivision (b) provides that each facility of the CDCR shall establish classification committees. They include Initial and Unit Classification Committees (UCC), Institution Classification Committees (ICC), and Facility Classification Committees. (Regs., § 3376, subd. (c)(1), (2).) "The ICC is delegated the primary authority for all classification actions within the institution." (DOM § 62010.8.2.)[2] An ICC also changes "an incarcerated person's work/privilege group." (Regs., § 3376, subd. (d)(3)(E).)

"The privilege group determines an inmate's eligibility for canteen draw, visiting, and other inmate activities," such as leisure activities during nonwork hours, personal telephone calls, and receipt of personal property packages. (DOM §§ 47130.4 [Inmate

---

[2] An ICC's duties include reviewing "incarcerated persons requests for meritorious sentence reduction to determine compliance with Penal Code section 2935." (Regs., § 3376, subd. (d)(3)(C).) When an ICC recommends granting such a reduction, the case is referred to the Department Review Board for a final decision. (DOM § 62010.10.4; see DOM § 62010.10.)

Classification System], 52020.8.7, 52060.5, 54030.7.1.) The five privilege groups were established to "provide a graduated system of incentives to promote a desire to achieve positive goals." (DOM § 53130.6.1.)

The CDCR has not shown that a meritorious sentence reduction would not affect the work group or privilege group to which Spencer is assigned and has not shown such a reduction would not be a factor or circumstance relevant to any discretionary determination made regarding the conditions of his confinement. In my view, an inmate has a direct and substantial interest in his classification and the conditions of his confinement. For instance, classification actions have a significant enough impact on a prisoner's interests that California courts require the administrative action to be supported by "some evidence." (See *In re Jenkins* (2010) 50 Cal.4th 1167, 1176; *In re Farley* (2003) 109 Cal.App.4th 1356, 1361–1362.) Because the CDCR has addressed only the meritorious sentence reduction's impact on Spencer's earliest parole eligibility date, it has failed to demonstrate a reduction would not impact Spencer's conditions of confinement. Accordingly, CDCR has not carried its initial burden as the party moving for summary judgment and there is no need to reach the third step of the analysis and consider whether Spencer's opposition papers have demonstrated the existence of a trial issue of material fact.

In *In re Young* (2004) 32 Cal.4th 900, the California Supreme Court determined that Three Strike prisoners who had reached their maximum credit limit under Penal Code section 667, subdivision (c)(5) were eligible for a meritorious sentence reduction under Penal Code section 2935. In analyzing the statute's purpose, the court stated that "encouraging prisoners to behave in a manner that might save lives is commendable" and it was "difficult to imagine that the Legislature intended to give all prisoners, *except* those Three Strikes prisoners, an incentive to save another's life." (*In re Young*, *supra*, at pp. 908–909.) In my view, the incentives arising from the possibility of bettering a prisoner's

5

conditions of confinement are capable of motivating a prisoner to perform "a heroic act in a life-threatening situation" or provide "exceptional assistance in maintaining the safety and security of the a prison" (Pen. Code, § 2935). Consequently, I cannot join the CDCR in ignoring those potential incentives and creating what is, in practical effect, an underground regulation excluding inmates who are eligible for a meritorious sentence reduction—that is, inmates who are not within the explicit exclusion in the last sentence of Regulation 3043.6, subdivision (a). (See generally, *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571–572 [interpretation of a regulation may be an impermissible underground regulation].)


FRANSON, J.

6